348

Osias KUPFERMANN and Tobias Kupfermann, co-partners doing business under the firm name and style of O. Kupfermann & Sons, Libelants-Appellees,

v.

UNITED STATES of America, Respondent-Appellant.

Azad B. KARABAGUI and Azad B. Karabagui Rug Corporation et al., Libelants-Appellees,

v.

UNITED STATES of America, Respondent-Appellant.

S. B. PENICK & COMPANY et al., Libelants-Appellees,

v.

UNITED STATES of America, Respondent-Appellant.

AVAKIAN BROTHERS, Inc., Libelant-Appellee,

v.

UNITED STATES of America, Respondent-Appellant.

BALFOUR GUTHRIE & COMPANY, LIMITED, a Corporation, Libelant-Appellee,

v.

UNITED STATES of America, Respondent-Appellant.

Nos. 56–60, Dockets 23535–23539.

United States Court of Appeals Second Circuit.

Argued Oct. 14, 1955.

Decided Nov. 7, 1955.

Yorkston W. Grist, New York City (Hill, Rivkins, Middleton, Louis & Warburton and David L. Maloof, New York City, on the brief), for libelants-appellees Kupfermann and Karabagui.

John W. R. Zisgen, New York City (Bigham, Englar, Jones & Houston, New York City, on the brief), for libelants-appellees S. B. Penick & Co. and others, Avakian Bros., Inc., and Balfour Guthrie & Co., Ltd.

Arthur M. Boal, New York City (J. Edward Lumbard, Jr., U. S. Atty. for the Southern Dist. of New York, and Tompkins, Boal & Tompkins, New York City, on the brief), for respondent-appellant.

Before CLARK, Chief Judge, and FRANK and WATERMAN, Circuit Judges.

PER CURIAM.

 These are five surviving libels in admiralty out of a substantial additional number brought for loss or damage to cargo by various shippers of goods consisting of rugs, wool, sheep and goatskins, gum, seeds, walnuts, etc., from the Persian Gulf to New York on the Government's S. S. Shickshinny in March and April, 1946. Judge Murphy heard the libels as consolidated for trial and, in a reasoned opinion, D.C.S.D.N.Y., 123 F.Supp. 99, made judicious and discriminating findings against the shippers in certain cases and in their favor in others. The shippers have not appealed, and respondent does not here question liability for various losses involving nondelivery and oil damage. Hence the only questions now remaining are as to recovery allowed for hook-hole damage—a minor item of approximately $1,000, adequately supported in the evidence—and the more substantial claims for water damage, both fresh and salt. Involved here were important and contested issues of fact, such as whether the rain falling at the first port of loading, Khorramshahr, damaged cargo there, whether this affected the cargo taken on some days later at the second port, Basra, whether wet dunnage was taken aboard at the first port and affected the later shipments, the respective portions of the cargo affected, and so on. Judge Murphy made a careful choice among the conflicting versions for reasons which he has set out, in substance refusing recovery for the wet cargo taken on at the first port, but holding the vessel responsible for wet dunnage which affected adversely the cargo received at the second port. His holdings in all these regards seem quite reasonable and supported in the evidence; at any rate, since they are not "clearly erroneous," we have no occasion to question them here. McAllister v. United States, 348 U.S. 19, 75 S.Ct. 6.

 The district court also held that, since no exceptions covering these matters were noted in the bills of lading,

the prima facie evidence of delivery and apparent good order and condition of the goods provided in the Carriage of Goods by Sea Act, 46 U.S.C. § 1303(3) (c) and (4), had not been rebutted by convincing proof to the contrary. Respondent contends that the water damage was not an apparent defect, but an inherent one or at least invisible on inspection, and that hence a clean bill of lading should not be sufficient to shift the burden of proof to the carrier. See The Niel Maersk, 2 Cir., 91 F.2d 932, certiorari denied 302 U.S. 753, 58 S.Ct. 281, 82 L.Ed. 582; Copco Steel & Engineering Co. v. The Alwaki, D.C.S.D.N.Y., 131 F.Supp. 332. The statutory policy permitting a reliance upon bills of lading is an important one and should not be undermined for the reasons advanced. Here the many bills of lading involved contain a large variety of exceptions relating largely to poor packaging and the like and, in certain instances not here involved, to water damage. The present bills are bereft of any indication of the damage here found when the cargo was outturned in New York. Where the goods themselves contain some basic, inherent, and hidden defect there may well be occasion to require proof of good condition upon delivery, but here with the type of goods involved there seems so obvious an opportunity for inspection that a possible rainfall on the goods five or six days earlier should not be an excuse to the carrier to avoid the normal effect of its bill of lading. See The Ciano, D.C.E.D.Pa., 69 F.Supp. 35. Moreover, the testimony as to the time of the rainstorm, the nature of the damage, including salt as well as fresh water, the various circumstances as to the loading of wet and dry cargo together, the effect of the wet dunnage, and the failure to renew a damaged sounding pipe so as to prevent leakage of water—all justify the holding which Judge Murphy made.

Affirmed.