**YECKES–EICHENBAUM, Inc., et al.,**
Plaintiffs,

v.

The TEXAS MEXICAN RAILWAY COMPANY, Defendant.

Civ. A. No. 1423.

United States District Court
S. D. Texas,
Corpus Christi Division.

April 15, 1957.

On the Merits June 21, 1958.

North, Blackmon & White, Corpus Christi, Tex., for plaintiffs.

Elmore Borchers, Laredo, Tex., Kleberg, Mobley, Lockett & Weil, Corpus Christi, Tex., for defendant.

ALLRED, District Judge.

Plaintiffs, (all having the same name) are corporations organized under the laws of New York, Pennsylvania and Massachusetts. Defendant is a Texas corporation.

The action is for damages to 146 carloads of cantaloupes, shipped by rail from the interior of Mexico through the port of Laredo, Texas, where domestic bills of lading were issued by defendant, consigned to eastern markets and sold by plaintiffs on a commission basis. The cantaloupes were packed in wooden crates and loaded on railroad cars in.

Mexico, no representative of defendant being present. They were not unloaded or reloaded in Laredo.

The bills of lading each carry a notation that the described property was received "in apparent good order, except as noted (contents and condition of contents of packages unknown), ...S.L.C." (meaning shippers load and count).[1] Upon arrival at eastern destinations crate breakage was noted in each of the cars which had caused damage to the cantaloupes. Plaintiffs sue for this damage caused by the breakage.[2] Plaintiffs move for summary judgment under Rule 56(a), Federal Rules of Civil Procedure, 28 U.S.C.A.

Admitting that the burden is on them to show delivery to the carrier in good condition, arrival at destination in damaged condition and the amount of damages,[3] plaintiffs say they have made a prima facie case (as to liability) by introduction of the bill of lading showing receipt in apparent good order [4] and the admitted damage at destination, thus shifting the burden of proof to defendant to show bad condition when received by the carrier; that if the cars contained any breakage at Laredo, it was the duty of the railroad inspector to order repairs or refuse a "clean" bill of lading; that since defendant contends that part of the breakage existed at Laredo, defendant has the burden of segregating the damage, else it is liable for the whole.[5]

Defendant recognizes the general rule as to the prima facie effect of a bill of lading reciting that goods were received in apparent good order without notation of visible damage but says that the presumption is only that, *so far as is disclosed by ordinary inspection,* the shipment was in good condition, etc.; that under all the circumstances here, particularly the notation "S.L.C." on each bill of lading, there is no such presumption as contended for by plaintiffs; that the general rule is that when the shipper loads the car for transportation, as here, he assumes responsibility for all defects in loading which are necessarily invisible to the carrier's agent or can not be discerned by ordinary observation or such inspection as readily can be made; [6] that plaintiff has the burden of proving that the cantaloupes were in better condition at Laredo than at destination; [7] that, at most, the recital of apparent good condition "S.L.C." under the circumstances here, is not prima facie evidence that *all* the crates and cantaloupes were in good condition at Laredo but only that part visible to a superficial inspection; [8] that under a bill of lading "S.L.C." the shipper has the obligation of seeing that a car is properly loaded.[9]

A shipment originating in a foreign country, delivered to a common carrier in this country for transportation to destination under a domestic bill of lading is within the Carmack amendment. Reider v. Thompson, 339 U.S.

---

1. 49 U.S.C.A. § 101 authorizes the carrier to insert in the bill of lading "Shipper's weight, load, and count," or other words of like purport to indicate that the goods were loaded by the shipper, and, if that be true, the carrier shall not be liable for damages caused by improper loading.

2. The amount of the damage is not in dispute.

3. Thompson v. McCarrick, 5 Cir., 205 F.2d 897.

4. 13 C.J.S. Carriers § 254, p. 538; Louisiana Southern Ry. Co. v. Anderson Clayton, 5 Cir., 191 F.2d 784; Tuschman v. Pennsylvania Railroad Co., 3 Cir., 230 F.2d 787, 791.

5. 13 C.J.S. Carriers § 79, p. 154 and various authorities cited by plaintiffs which defendant says are not applicable.

6. Blytheville Cotton Oil Co. v. Kurn, 6 Cir., 155 F.2d 467.

7. Tuschman v. Pennsylvania Ry. Co., footnote 4 supra; McNeely & Price Co. v. Ellerman & Bucknall S.S. Co., D.C.Pa., 100 F.Supp. 339.

8. Cf. Ohio Galvanizing & Mfg. Co. v. Southern Pacific Co., 6 Cir., 39 F.2d 840.

9. Delphi Frosted Foods Corp. v. Illinois Central Railroad Co., 6 Cir., 188 F.2d 343; South Carolina Asparagus Growers' Ass'n v. Southern Ry. Co., 4 Cir., 46 F.2d 452.

113, 70 S.Ct. 499, 502, 94 L.Ed. 698. However, in that case the court said:

> "We disavow, as did both the concurring judge and the dissenting judge below, any intimation that our holding might impose liability on a domestic carrier for damage attributable to an ocean carrier. *The complaint in this case alleges that the shipment was received by respondent in good order and condition and was damaged when delivered. Unless petitioner can prove the case stated by his complaint, respondent is not liable.*"[10]

■ The Reider case does not discuss the prima facie effect of the domestic bill of lading but the language quoted above emphatically reasserts the general rule stated in all the cases that the burden is on the shipper to prove delivery in good condition. From the opinion in the same case after re-trial,[11] it appears that the domestic bill of lading, issued at New Orleans after the ocean shipment from Buenos Aires, recited receipt "in 'apparent good order' * * * 'contents and condition of contents of packages unknown.'" Although the court says nothing about the prima facie effect of such a recital, it indicates that some proof was offered, probably by both sides. I quote:

> "(7, 8) The shipment in question followed an ocean shipment. Evidence was introduced to show that the exterior of the boxes was in good condition and that there were no water stains apparent at the time of the issuance of the bill of lading and transshipment. The bill of lading recited in 'apparent good order', but that the 'contents and condition of contents of packages (were) unknown.' These provisions are considered to relate to the external condition of the packages and do not establish the condition of the contents. However, when packages are received by the carrier in acknowledged good external condition but are delivered by the carrier in a damaged or stained condition which could reasonably and logically be found to indicate that the discovered damage or deterioration of the contents resulted from the cause indicated by the condition of the external package, theretofore received in good condition, the trier of facts may infer from these circumstances that damage to the contents was occasioned by the negligence of the carrier in the respect indicated by the changed external condition of the package. 'The outturn itself' may be considered as evidence. We, of course, do not anticipate the scope and effect of the evidence, or the weight and credit the trier of facts should accord it upon another trial when the testimony and all the circumstances of the case will be considered in the light of the applicable principles to which we have referred."

From unchallenged statements made in the briefs, it is clear: (a) that defendant had opportunity to inspect all cars and did inspect practically all of them either at Nuevo Laredo, Mexico, or Laredo, Texas;[12] (b) such inspections generally were made by a representative of an inspection agency (representing defendant and other carriers) who had authority to, and often did, require cars to be unloaded and repairs made to the bracing or crates; (c) that the packing, loading and bracing was done in Mexico, 800 miles south of Laredo, in accordance with the Freight Container Bureau Tariff; (d) that the crates are loaded in rows, three crates deep from each end of the car to the middle, where heavy bracing is installed; (e) upon arrival in Nuevo Laredo a few samples were taken from the top layers

10. Emphasis supplied throughout this memorandum unless otherwise indicated.

11. Reider v. Thompson, 5 Cir., 197 F.2d 158, 161.

12. Nuevo Laredo is just across the Rio Grande from Laredo, Texas.

by representatives of the United States Department of Agriculture.

There seems to be little dispute between the parties as to the facts set out above, the principal difference being only as to the conclusions which should be drawn from the admitted facts. Defendant contends that the inspector at Laredo could see only one side of the crates in the doorway of the car and the upper side of the top layer of crates and then only if they are not covered by ice; that the top layer *is* covered with ice most of the time but, in any event, two-thirds of the crates are never seen at Laredo or Nuevo Laredo. Defendant says that under these circumstances, especially where the bills of lading contain an "S.L.C." notation, plaintiffs are not entitled to claim they have established prima facie that the cantaloupes were in good condition at Laredo, quoting from 13 C.J.S. Carriers § 254, p. 538, as follows:

> "No presumption exists that the goods were in good condition when delivered to the carrier. The presumption arises, however, from the face of the receipt of the goods by the carrier without objection or exception noted in the bill of lading or shipping receipt, that *as far as the condition was apparent on ordinary inspection* the goods were in good condition." [13]

It is to be noted that, notwithstanding the language emphasized by defendant above, the presumption does arise where the bill of lading recites receipt of the goods *without exception or objection*. "S.L.C." is not an exception as to *condition* of the crates or cantaloupes—it simply is an indication that they were loaded by the shipper, relieving the carrier of liability *caused by improper loading*. Here it is admitted that some of the crates and cantaloupes arrived destination in damaged condition and that the damage to the cantaloupes was caused by the damaged or broken crates.

Whether this was caused by improper loading or rough transportation probably is the ultimate issue in the case.

The prima facie, or presumptive, effect of bills of lading with qualifications has received considerable attention but the weight of authority is best summed up, I think, in 33 A.L.R.2d 872, as follows:

> " * * * That the issuance by a carrier of a bill of lading or shipping receipt which, containing no notation of visible damages or defects, does include an affirmative acknowledgment that on receipt the article or articles to be shipped were in 'good order' or 'apparent good order,' frequently accompanied by a qualification to the effect that the contents of the packages shipped were unknown, generally operates to create some kind of presumption or prima facie case in favor of the shipper or consignee seems clear. The form and limits of this presumption or prima facie case are, however, difficult to define with precision."

The second decision (197 F.2d 158) in Reider v. Thompson, supra, is cited on page 876 of 33 A.L.R.2d.

From all the foregoing, I am of the opinion that the bills of lading here created a presumption that the crates and cantaloupes were in good condition, at least so far as could be determined by ordinary inspection, when received by defendant at Laredo and defendant has the burden of going forward with proof to overcome the presumption, perhaps by proof of the nature set out in defendant's brief, from which deductions may be drawn. Of course, the burden of proof on the whole case, initially and finally, is on plaintiffs.

By invitation of the parties, the court has personally inspected a number of cars of Mexican cantaloupes at Laredo, especially as to packing and loading.

---

13.  Emphasis by defendant.

It is not necessary at this time to pass on plaintiffs' claim that defendant is liable for all damages unless it segregates the damage sustained in the United States from that sustained before the domestic transportation.

A jury having been waived, and the parties having agreed that the court shall hear the case in Laredo, a further pretrial is hereby set for Corpus Christi, May 2, 1957, at 2:00 P.M., at which time a trial date will be determined.

The Clerk will notify counsel.

### On the Merits

Action by plaintiffs, foreign corporations, against defendant, a Texas corporation, for damages to 146 carloads of cantaloupes shipped by rail from the interior of Mexico through the port of Laredo, Texas, where domestic bills of lading were issued by defendant. The cantaloupes were consigned to eastern markets and sold by plaintiffs on a commission basis. They had been packed in wooden crates and loaded on railroad cars in Mexico and transported by the Mexican railroad approximately 850 miles to Nuevo Laredo, Mexico.

Upon arrival in Nuevo Laredo the car doors were opened and samples taken from a few crates by representatives of the United States Department of Agriculture. Generally the crates were covered, in whole or in part, with a layer of ice and a representative of the Western Weighing and Inspection Bureau generally looked into each car. If the bracing in the doorway, or any visible crate, needed repair, the shipper was required to do it then. The inspector could not see all, or even the greater part, of the crates, however; and, while most of plaintiffs' witnesses testified that from such inspection it could be determined whether there was any "material" damage, it was impossible to determine from such an inspection that *no damage* had been done to either the crates or the cantaloupes by such an inspection. None of the cars in question were unloaded at Nuevo Laredo for such inspection.

After inspections in Nuevo Laredo, the cars were taken through Customs and domestic bills of lading issued by defendant; each of them carried a notation that the described property was received in "apparent good order except as noted, contents and condition of contents of packages unknown.....S.L.C.," (meaning shipper's load and count).[1] Upon arrival at their eastern destinations, crate breakage was noted in each of the cars involved here which crate breakage had caused damage to the cantaloupes. It is for this damage to the cantaloupes, not the damage to the crates, for which plaintiffs sue here. In other words, this action is generally what is referred to in the trade "as a breakage claim," customarily separated from claims such as those due to the condition of the commodity or loss occasioned by delay and the market decline.

The following is quoted from plaintiffs' brief:

"The cars involved in the present suit were sold by plaintiff on a commission basis. He sold each of the cars for the best price obtainable and after deducting a percentage of the amount received as his commission, plaintiff remitted the balance to the various consignors. If a car of cantaloupes which originated in the United States upon arrival in New York was found to contain two broken crates and in addition considerable decay in the remainder of the crates the practice has been for the receiver to file a breakage claim immediately with the delivering carrier. He would no doubt also protest the car on account of the decay and notify consignor who would probably at some later date file a claim on account of the condition. The breakage claim, however, would be more or less immediately paid to the receiver by the delivering carrier.

1. 49 U.S.C.A. § 101.

"Since the extent of the breakage and the amount of the breakage claim is immediately agreed upon, it is customary for receiver to show on his account sales which he furnishes the shipper the amount of this breakage and to include such amount in remitting to the shipper. The receiver would then retain the payment for breakage when received from the carrier. This was done by plaintiff in the present case. Plaintiff, in the belief that the carriers would pay these breakage claims in full, remitted the full amount of them to the various shippers. Consequently any recovery which might be had for the Mexico proportion rightfully belongs to plaintiff.

"For many years the carriers paid breakage claims in full regardless of where the car originated. Some years ago, the carriers stopped paying breakage claims in full on cars which originated in Mexico but instead they would, after an agreement between the delivering carrier and the consignee was reached as to the extent of the breakage damage, make an offer based upon a proration of mileage which the car traveled in the United States and in Mexico. For example, if a car moved from a point in Mexico 500 miles to the border and from the border to a point in the United States 1,000 miles, the carriers offered to pay two-thirds of the amount of the breakage. When this practice was initiated plaintiff refused to accept such offers as settlement in full. Thereafter an agreement between the various carriers and plaintiff was reached whereby the carriers agreed to pay and did pay the portion of the claim based upon the mileage traveled in the United States without prejudice to plaintiff's right to attempt to collect the balance of the claim."

Heretofore the parties moved for summary judgment, plaintiffs contending that the bills of lading showing receipt at Laredo in apparent good order made a prima facie case as to liability, thus shifting the burden of proof to the defendant to show bad condition when received by the carrier. Defendant, recognizing the general rule as to the prima facie effect of such a recital in a bill of lading, urged that such presumption was only that the shipment was in good condition *so far as could be disclosed by ordinary inspection;* that in view of the notation "S.L.C." there was no such presumption as to that part of the shipments not visible; that plaintiff had the burden of proving that the cantaloupes were in *better condition* at Laredo than at destination and that "at most the recital of apparent good condition S.L.C." was not prima facie evidence that all of the crates were in good condition at Laredo.

The court overruled plaintiffs' motion for summary judgment in a memorandum dated April 15, 1957, here referred to and made a part hereof. The court held that while a shipment originating in a foreign country, delivered to a common carrier in this country under a domestic bill of lading was within the Carmack amendment, Reider v. Thompson, 339 U.S. 113, 70 S.Ct. 499, 94 L.Ed. 698, yet the burden was still on the plaintiff to show that the shipment was received at Laredo in good condition and was damaged when delivered; that receipt of the goods by the carrier, without exception or objection in the bill of lading, did create "some kind of presumption or prima facie case requiring the defendant to go forward with proof to overcome the presumption." Evidence has been heard by the court, and, by agreement of the parties, the court personally inspected certain cars of cantaloupes in Laredo while they were being readied for shipment to eastern points.

The court finds the evidence presented by defendant sufficient to overcome the presumption or prima facie case in favor of plaintiffs made by virtue of the recitals in the bills of lading; and that, therefore, the burden, which really has never shifted from plaintiffs, has

not been met; that the type of inspection made at Nuevo Laredo, Mexico, or Laredo, Texas, is not such that any witness can look at a loaded car and tell that there is *no* breakage damage in it; indeed, the court believes from all the evidence that it would be possible for considerable damage to exist, not visible or apparent from such inspection; that the only way of establishing definitely that the cantaloupes were delivered in good condition and in undamaged crates is to unload in Nuevo Laredo, inspect and re-load, which can be done without too great an expense. The court further finds that generally there is more damage in Laredo in cars which are not unloaded than is visible; and, circumstantially, from the fact that this is true with reference to shipments generally, the court finds that there was more damage in the cars in question than was visible or apparent at the times the bills of lading were issued; at least that plaintiff has failed to show that there was not more damage than was apparent or visible at the time of the inspection. Damage from crate breakage is progressive and, even though there may be damage to the crates only at Laredo, and not always the melons, if the transportation is continued, damage to the cantaloupes will result. The court further finds that the presumption relied upon by plaintiffs disappeared in view of the evidence here and, circumstantially, that there is as much reason to believe that at least a proportionate part of all crate damage, and consequent damage to the cantaloupes, occurred in the transportation by Mexican railroads to Nuevo Laredo as occurred after receipt of the cantaloupes by defendant at Laredo.

The foregoing findings eliminate any necessity for discussion of the authorities cited by plaintiffs to the effect that if the loss or damage to goods is due partly to the negligence of the carrier it is liable for all unless it can show the amount due to its own negligence or which occurred on its line. No negligence on the part of defendant has been shown other than the presumption of negligence which defendant here has refuted.

Judgment will be for defendant. The Clerk will notify counsel accordingly.