YECKES–EICHENBAUM, INC., et al.,
Appellants,

v.

TEXAS MEXICAN RAILWAY COM-
PANY, Appellee.

No. 17455.

United States Court of Appeals
Fifth Circuit.

Feb. 19, 1959.

Rehearing Denied April 16, 1959.

John C. North, Jr., Ward & Brown, North, Blackmon & White, Corpus Christi, Tex., for appellants.

Elmore H. Borchers, Laredo, Tex., Leslie S. Lockett, Kleberg, Mobley, Lockett & Weil, Corpus Christi, Tex., for appellee.

Before HUTCHESON, Chief Judge, and RIVES and JONES, Circuit Judges.

HUTCHESON, Chief Judge.

Filed February 9, 1956, the suit was for damages to 146 carloads of cantaloupes, packed in wooden crates, shipped by rail from Laredo, Texas, to eastern markets, and sold by plaintiffs on a commission basis. Each of the bills of lading carried a notation that the described property was received in "apparent good order except as noted (contents and condition of contents of packages unknown) * * * S.L.C." (meaning shippers load and count).[1]

Upon arrival at their eastern destination each of the cars showed crate breakage which had caused damage to the cantaloupes, and it was for this damage to the cantaloupes that plaintiffs sued.

1. 49 U.S.C.A. § 101.

In other words, the action is generally what is referred to in the trade as a breakage claim which is customarily distinguished and separated from claims such as those due to the nature and condition of the commodity and losses occasioned by delay and market decline.

On January 15, 1957, interrogatories were propounded to plaintiffs, on February 13, 1957, plaintiffs filed a motion for summary judgment, and on February 20, 1957, answers to the interrogatories were filed. On February 25, 1957, the defendant filed a reply to plaintiffs' motion for summary judgment in which it urged that plaintiffs' motion for summary judgment be denied and that the court enter such a judgment for defendant. In the alternative, defendant asked that the case be set for hearing and for a determination; that there is no presumption of good order and condition arising from the introduction of the bill of lading; that the plaintiffs have not sustained their burden; and that judgment be entered for defendant.

Thereafter, on April 15, the district judge, filing a carefully stated and thoroughly reasoned opinion,[2] setting out the facts and giving his reasons therefor, denied the motion for summary judgment. Later plaintiffs having filed their first amended original complaint and defendant its answer thereto, the cause came on for trial before the judge without a jury, and, at its ending, the district judge made and filed an opinion[3] on the merits, incorporating therein by reference his opinion on summary judgment, in which he had held that the issuance of the good order bills of lading made out a prima facie case requiring the defendant to go forward with proof to overcome the presumption that the shipments were in the condition described in the bills of lading.

In contradiction, however, of the principles therein stated, declaring that to impose on the carrier liability for the breakage observed at destination, plaintiffs were obligated to make further proof that each shipment was, as stated in the bills of lading, in good order and condition at Laredo, he held that on the evidence as a whole they had not sustained this burden. Basing this holding upon evidence offered by defendant, not as to the condition of the particular shipments in question but as to that of other shipments originating in Mexico and tendered, as these were, for carriage from Laredo, he held that, notwithstanding the good order bills of lading and the admitted fact of the existence of the breakage damage on arrival, the plaintiffs could not hold the carrier liable for that damage.

Appealing from the judgment giving effect to these conclusions, appellants are here urging that, in thus applying the law to the undisputed facts of this case and, upon evidence having no real relation to the issue in the case, the condition as to crate breakage of the particular shipments when received and accepted by defendant at Laredo, denying plaintiffs the benefit of the presumption attending the issuance of the bill of lading, the district judge departed from the law clearly and correctly stated by him in his opinion and deprived plaintiffs of the recovery to which, under the bills of lading and the evidence as a whole they were, as matter of law, entitled.

For the reasons hereafter stated, we think that this is so and that the judgment must be reversed and here rendered for plaintiffs.

█ In his opinion on summary judgment, the district judge, in accord with the law of the cases,[4] correctly held that the introduction of the bills of lading made a prima facie case. In his opinion on the merits, however, he incorrectly held that the evidence, that other Mexi-

2. 165 F.Supp. 204–208.

3. 165 F.Supp. 208–210.

4. Louisiana Southern Ry. Co. v. Anderson, Clayton & Co., 5 Cir., 191 F.2d 784; Kupfermann v. United States, 2 Cir., 227 F.2d 348; Reider v. Thompson,

5 Cir., 197 F.2d 158; The Vallescura, 293 U.S. 296, 55 S.Ct. 194, 79 L.Ed. 373; City of Wichita Falls v. Lipscomb, Tex. Civ.App., 50 S.W.2d 867; Missouri Pacific R. Co. v. Trautmann Bros., Tex.Civ. App., 301 S.W.2d 240; Texas & P. Ry. Co. v. Empacadora de Ciudad Juarez,

can shipments had arrived at Laredo with crates in damaged condition, overcame this presumption as to the shipments at issue. He thus gave effect to defendant's erroneous contentions: (1) that notwithstanding the fact that, as to it, the shipment originated not in Mexico but in Laredo, Texas,[5] where the cars were tendered to it and the bills of lading sued on were issued, the shipments must in effect be treated as though originating in Mexico; and (2) that evidence, opinion and otherwise, as to the condition at Laredo not of the shipments in suit but of others which had come from Mexico, overcame the presumption arising from the issuance of the bills of lading as to the condition of these shipments.

Nothing in any of the decisions cited by him or by the appellants lend support to this view. Indeed, all of the controlling decisions, many of which are collected in the note in 33 A.L.R.2d at pages 872 et seq., note 4 supra, are to the contrary. That this must be so upon the record is made entirely clear by a brief consideration of the basic facts[6] of the case, in the light of the principles of carrier liability in circumstances of the kind as the cases cited in note 4, supra, and others like them have declared them.

"No presumption exists that the goods were in good condition when delivered to the carrier. The presumption arises, however, from the fact of the receipt of the goods by the carrier without objection or exception noted in the bill of lading or shipping receipt, that as far as the condition was apparent on ordinary inspection the goods were in good condition." 13 C.J.S. Carriers § 254, p. 538.

In The Vallescura, 293 U.S. 296, 55 S.Ct. 194, 197, 79 L.Ed. 373, where the Supreme Court held the carrier prima facie liable for damages which it did not show to have been caused by an excepted peril, the court said:

"The carrier is charged with the responsibility for a loss which, in fact, may not be due to his fault, merely because the law, in pursuance of a wise policy, casts on him the burden to show facts relieving him from liability."

S.A., Tex.Civ.App., 309 S.W.2d 926; Minneapolis Fire & Marine Ins. Co. v. Baltimore & O. R. Co., Minn., 53 N.W. 2d 828, 33 A.L.R.2d 860 and note at page 867.

5. Cf. Texas & P. Ry. Co. v. Empacadora, etc., note 4 supra.

6. As material here these are:
   While the cantaloupes had been shipped by rail from the interior of Mexico to Nuevo Laredo, upon arrival there the car doors were opened and samples taken by representatives of the U. S. Dept. of Agriculture and a representative of the Western Weighing and Inspection Bureau.
   As also shown in the opinion, after inspection at Nuevo Laredo, the cars were taken through customs and domestic good order bills of lading were issued by defendant, each carrying the notation hereinabove referred to, and, upon arrival at destination, crate breakage was noted in each of the cars involved.
   The defendant offered no evidence whatever in contradiction of the bills of lading as to the condition of the shipments at Laredo. Instead it undertook to rebut the presumption, that the shipments were in good condition when accepted by the carrier at Laredo, which the bills of lading raised, not by evidence that the condition of these particular shipments was other than as stated in the bills but by evidence having no relation to and no tendency to prove the fact sought to be shown. This proof was opinion evidence (1) that the type of inspection made at Nuevo Laredo or Laredo was not such that any witness could tell with certainty that there was no breakage damage in it, and (2) that the only way of establishing that the crates were undamaged would have been to unload in Nuevo Laredo and inspect and reload, which can be done without too great an expense.
   In addition the court found in the same way and from the same kind of evidence that it would be possible for considerable damage to exist, not visible or apparent from such inspection, and that generally there is more damage in Laredo in cars which are not unloaded than is visible, and, on the basis of this evidence alone, he found that the presumption relied upon by plaintiffs had disappeared.

In Missouri Pacific R. Co. v. Trautmann Bros., note 4, supra, the court, holding that the shipper proved its prima facie case by introducing the bills of lading and proving its damages, said the burden was not on the shipper but was on the carrier to show what part of the damages was attributable to the shipper and what part to the carrier.

■ In this case, the carrier, presumably to save itself expense and trouble, elected not to make a more careful inspection of each of the crates in the cars, though it had possession of the cantaloupes all the time they were at Laredo, but to deliver its clean bills of lading. The only way it can avoid the effect of this action and these bills is to prove that the cantaloupes involved in these shipments had suffered breakage damage before the cars of cantaloupes were delivered to the carrier at the bridge in Laredo and, having failed to make any proof on this point, the court's finding that it did is clearly erroneous, indeed it is without support in the evidence.

■ The presumption of a prima facie case is a substantial right of the shipper and is to be overcome only by convincing proof to the contrary. Kupfermann v. United States, 2 Cir., 227 F.2d 348. Appellee's reliance on Texas & P. Ry. Co. v. Empacadora de Ciudad Juarez, S.A., Tex.Civ.App., 309 S.W.2d 926, will not at all do. Indeed when the difference between the nature and character of the damage claimed in that case and that claimed here is considered, the case is seen to be strong authority for appellants' position here. Holding as it does, that except where the property carried is perishable property and the damage claimed is the result of inherent vice, plaintiff makes out a prima facie case by the introduction of a good order bill of lading, it states the law exactly as we have stated it here, where the damage claimed results from breakage of crates, a matter entirely different from spoilage due to inherent vice. The judgment should have been entered for plaintiffs. It is, therefore, reversed and here rendered for appellants.

RIVES, Circuit Judge (dissenting).

Being in substantial agreement with the carefully considered opinions of the learned district court,[1] I respectfully dissent.

It is elementary that the burden rests on the shipper to prove delivery to the carrier in good condition before he can recover for the damaged condition of the shipment upon its arrival at destination. To meet that burden as to each of the 146[2] carloads of cantaloupes, the shippers relied on the bills of lading issued by the carrier at Laredo, Texas. Those bills of lading acknowledged receipt "in apparent good order and condition" of each of the cars, described by initial and number, loaded with a specified number of "Jumbo crates cantaloupes origin in Mexico SL&C". "SL&C" means shipper's load and count.

The district court held "that the bills of lading here created a presumption that the crates and cantaloupes were in good condition, at least so far as could be determined by ordinary inspection, when received by defendant at Laredo and defendant has the burden of going forward with proof to overcome the presumption." 165 F.Supp. 204, 207. After hearing the evidence, examining a small model car with removable top showing the manner of loading the crates and the limited opportunity for inspection, and making, upon the invitation of the parties, personal inspection of a number of cars of Mexican cantaloupes in Laredo, especially as to packing and loading, the district court made detailed findings of the evidence which it thought sufficient to overcome any presumption or prima facie case:

"* * * that the type of inspection made at Nuevo Laredo, Mexico, or Laredo, Texas, is not such that any witness can look at a loaded

1. Reported in 165 F.Supp. 204 to 210.

2. Actually 141 cars because it developed that five of the 146 did not move by the defendant carrier, and they were eliminated by agreement.

car and tell that there is *no* breakage damage in it; indeed, the court believes from all the evidence that it would be possible for considerable damage to exist, not visible or apparent from such inspection; that the only way of establishing definitely that the cantaloupes were delivered in good condition and in undamaged crates is to unload in Nuevo Laredo, inspect and re-load, which can be done without too great an expense. The court further finds that generally there is more damage in Laredo in cars which are not unloaded than is visible; and, circumstantially, from the fact that this is true with reference to shipments generally, the court finds that there was more damage in the cars in question than was visible or apparent at the times the bills of lading were issued; at least that plaintiff has failed to show that there was not more damage than was apparent or visible at the time of the inspection. Damage from crate breakage is progressive and, even though there may be damage to the crates only at Laredo, and not always the melons, if the transportation is continued, damage to the cantaloupes will result. The court further finds that the presumption relied upon by plaintiffs disappeared in view of the evidence here and, circumstantially, that there is as much reason to believe that at least a proportionate part of all crate damage, and consequent damage to the cantaloupes, occurred in the transportation by Mexican railroads to Nuevo Laredo as occurred after receipt of the cantaloupes by defendant at Laredo." 165 F.Supp. at page 210.

The shippers knew that they, or their consignors, had loaded the cars at a point in Mexico approximately 850 miles from Laredo. The loaded cars were tendered by the shippers to the defendant carrier at Laredo. It was then physically impossible to look at a loaded car and tell whether the car contained no damaged crates. The carrier was authorized to insert in the bill of lading "SL&C", meaning shipper's load and count, and thereby to relieve itself from liability for damages caused by improper loading.[3] There was no testimony as to the condition of the crates or of the cars at the time they were loaded in the interior of Mexico.[4] When the defendant carrier acknowledged receipt of the shipments in Laredo "in apparent good order and condition," its admission extended no further than it said, namely, to the external appearance of the shipments; that is, from a reasonable inspection of the cars as loaded, they appeared to be in good order and condition. That seems to me to be the concensus of the holdings in nearly all of the cases which are collected in the annotation in 33 A.L.R.2d 867–879.

There was no proof of anything peculiar about the handling of the 141 carloads of cantaloupes involved in this action. The evidence showed that the cost of an investigation to determine the cause of breakage damage in each particular car would probably be greater than the amount of damage. Accordingly, the American railroads, as a matter of expediency and business practice, have adopted a policy of prorating between themselves on a mileage basis the amount of the damage. The National Railways of Mexico will not participate in any such proration. The defendant carrier in this case paid to the shipper that part of the breakage so allocated to the American line without prejudice to the right to sue for the part so allocated to the Mexican railroads and deducted from the breakage. To me that seems to be acting in a spirit of fairness. Further, I think the district court properly considered the methods of loading, packing and handling, the kind of inspection possible at Laredo, and the studies showing that in nearly all cases there was more breakage

---

**3.** 49 U.S.C.A. § 101.

**4.** Compare Chicago & N. W. Ry. Co. v. C. C. Whitnack Produce Co., 1922, 258 U.S. 369, 372, 42 S.Ct. 328, 66 L.Ed. 665.

to the crates when the cars arrived in Laredo than could be ascertained by an ordinary inspection.

It was competent, I think, for the shipper and the carrier to contract upon the basis of the shipper's load in the interior of Mexico and the condition of the shipments apparent in the loaded cars when they arrived at Laredo. The carrier was under no duty either to require the shipper to unload and reload the cars before acceptance, or itself to do so after acceptance, in order to make a more complete inspection.

Under all of the circumstances of this case, I cannot say that the district court erred in holding that the presumption of good order and condition at the time of delivery to the carrier was a limited presumption, nor that its finding that that presumption had been overcome by the evidence was clearly erroneous.

I therefore respectfully dissent.

Rehearing denied; RIVES, Circuit Judge, dissenting.