**BLUE BIRD FOOD PRODUCTS CO.,**
Appellant,

v.

**BALTIMORE & OHIO RAILROAD
COMPANY.**

Nos. 71–1901 to 71–1904.

United States Court of Appeals,
Third Circuit.

Argued March 7, 1972.

Resubmitted under Third Circuit Rule
12(6) on Nov. 20, 1972.

Decided Feb. 20, 1973.

Aldisert, Circuit Judge, dissented
and filed opinion.

Walter W. Rabin, Meltzer & Schiffrin, Philadelphia, Pa., for appellant.

Alan Edward Casnoff, Frederick H. Ehmann, Jr., Norman R. Bradley, Philadelphia, Pa., for appellee.

Before BIGGS, VAN DUSEN and ALDISERT, Circuit Judges.

1. The district court's opinion is reported at 329 F.Supp. 1116 (E.D.Pa.1971).

2. 49 U.S.C. § 20(11) provides in relevant part as follows:
"Any common carrier, railroad, or transportation company subject to the provisions of this chapter receiving property for transportation from a point in one State . . . to a point in another State . . . shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass within the United States . . . when transported on a through bill of lading, and no contract, receipt, rule, regulation, or other limitation of any character whatsoever shall exempt such common carrier, railroad, or transportation company from the liability imposed; and any such common carrier, railroad or transportation company so receiving property for transportation from a point in one

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

Blue Bird Food Products Co. ("Blue Bird") appeals from the district court's entry of judgment for the Baltimore & Ohio Railroad Company ("B & O") with respect to four actions filed by Blue Bird against B & O.[1] Blue Bird claimed damages from B & O under the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 20(11), in connection with four carloads of fresh hams shipped to it from a midwest packing company via the B & O.[2] After a non-jury trial extending through three days, the district court entered judgment in favor of B & O, apparently on the ground that Blue Bird had not made out a prima facie case. For the reasons to be stated, we will vacate the judgment and remand the case to the district court for further proceedings consistent with this opinion.

In Missouri Pacific Railroad Company v. Elmore & Stahl, 377 U.S. 134, 84 S.Ct. 1142, 12 L.Ed.2d 194 (1964), the Court set forth the circumstances in which a carrier may be held liable for damages pursuant to 49 U.S.C. § 20(11):

"[U]nder federal law, in an action to recover from a carrier for damage to

State . . . to a point in another State . . ., or any common carrier, railroad, or transportation company delivering said property so received and transported shall be liable to the lawful holder of said receipt or bill of lading or to any party entitled to recover thereon, whether such receipt or bill of lading has been issued or not, for the full actual loss, damage, or injury to such property caused by it or by any such common carrier, railroad or transportation company to which such property may be delivered or over whose line or lines such property may pass within the United States . . . when transported on a through bill of lading, notwithstanding any limitation of liability or limitation of the amount of recovery or representation or agreement as to value in any such receipt or bill of lading, or in any contract, rule, regulation, or in any tariff filed with the Interstate Commerce Commission; and any such limitation, without respect to the manner or form in which it is sought to be made is declared to be unlawful and void: . . . . ."

a shipment, *the shipper establishes his prima facie case when he shows delivery in good condition, arrival in damaged condition, and the amount of damages.* Thereupon, the burden of proof is upon the carrier to show both that it was free from negligence and that the damage to the cargo was due to one of the excepted causes relieving the carrier of liability." 377 U.S. at 138, 84 S.Ct. at 1145. (Emphasis added.)

The disagreement between the parties to the instant appeal revolves around the first requirement for a prima facie case set forth in *Elmore & Stahl, supra,* that is, whether the hams were in good condition when delivered from the shipper to the initial carrier.

Blue Bird introduced no direct testimony before the district court that the hams involved in these suits were delivered to the carrier in good condition. Instead, Blue Bird proposed to satisfy this requirement by the introduction into evidence of the bill of lading for each of the four ham shipments. The following language appeared in each of the four bills of lading:

> "RECEIVED, subject to the classifications and tariffs in effect on the date of the issue of this Bill of Lading, . . . the property described below, *in apparent good order,* except as noted (contents and condition of contents of packages unknown) . . . ." (Emphasis added.)

The "property" referred to in this language was variously described in the body of each bill of lading as "4 LONG HOOKS 58 RACKS" weighing 40046 pounds,[3] "2527 pea Fresh Meats" weighing 36047 pounds,[4] "1 LOT GRN MT PK CUTS" weighing 39712 pounds,[5] and "loose fresh pork picnics" weighing 39478 pounds.[6] None of the bills of lading listed an exception to the "apparent

good order" of the hams when delivered to the initial carrier. Three of the four bills of lading indicated that the hams were being shipped pursuant to "Plan 2–¼"; the fourth did not indicate a routing plan.[7]

In Tuschman v. Pennsylvania Railroad, 230 F.2d 787 (3d Cir. 1956), this court held that a representation in a bill of lading that goods were received "in apparent good order" establishes a prima facie case of delivery in good order with respect to all aspects of the goods which were open to inspection and visible, but that the carrier may show that the alleged damage was caused in whole or in part by a condition which was not apparent when it received the goods:

> "The acknowledgment by the bill of lading of the crane's apparent good order was prima facie evidence that, as to all parts which were open to inspection and visible, the crane was in good order at the point of origin. This did not preclude the railroad from showing that the alleged damage in whole or part proceeded from some cause or causes which existed, but which were not apparent when it received the crane." 230 F.2d at 791.

See also Nelson v. Woodruff, 66 U.S. 156, 160, 162, 1 Black 156, 17 L.Ed. 97 (1861). This evidentiary rule set forth in *Tuschman* is consistent with the language contained in the bill of lading, since this language represents only that the goods were received from the shipper in "apparent" good order; any defects in those parts of the goods which were not open to inspection and visible would presumably not be "apparent" to the carrier and thus would not be included within the carrier's representation.

■ The district court, however, concluded that the "apparent good order" representation in the bill of lading did not create a prima facie case with re-

---

3. Exhibit P–2 at 32a.

4. Exhibit P–3 at 33a.

5. Exhibit P–4 at 34a.

6. Exhibit P–1 at 31a.

7. Exhibit P–1 at 31a contains no routing plan. However, Blue Bird appears to have conceded that this trailerload was also shipped under Plan 2–1/4. See N.T. 314.

spect to the four ham shipments involved in the case *sub judice*. The basis for this judgment by the district court was its implicit finding that in these four cases the shipper loaded the hams in a trailer provided by the shipper and then "sealed" the trailer before delivering it back to the carrier for shipment to the consignee.[8] The district court determined that when merchandise is delivered to a carrier in a "sealed" trailer it is not "open and visible," [9] and held that in these circumstances the consignee who sues the carrier for damage to the goods cannot establish his prima facie case by means of the "apparent good order" representation in the bill of lading but must instead "establish by direct evidence that the goods were delivered to the carrier in good order." 329 F.Supp. at 1118.

After the initial argument in this case and the filing of majority and dissenting opinions, which were vacated by the panel following consideration of a Petition for Rehearing, a pre-hearing

8. During the course of the trial, the parties stipulated that Plan 2–1/4 is a "commonly known" plan "in which the shipper loads a trailer belonging to the initial carrier; that the carrier then picks up the loaded trailer at the point of origin, transports the trailer across country to its ramp in Philadelphia and that then consignee picks up such trailer at the ramp." N.T. 316–17. Nothing was said in this stipulation respecting the sealing of the trailer. At a pre-hearing conference held in September 1972, counsel for defendant conceded that "the record does not specifically indicate that the trailers were sealed" (p. 4) and "there is no specific witness who . . . said that in these four cases the trailer was sealed at origin by the shipper." See Glick v. White Motor Company, 458 F.2d 1287, 1291 (3d Cir. 1972); see, also, for example, Chwalow v. Commissioner of Internal Revenue, 470 F.2d 475, 477 (3d Cir. 1972), showing that this court has given effect to statements by counsel concerning the facts in documents filed in this court after appeal. However, Mr. Roeder, a witness for B & O, testified:

"Q Now, what is a seal on a trailer?
"A The seal is a metal band fixed to the rear door. Generally the seal has numbers on it.
"Q Who affixes that seal, if you know?
"A In a plan two and a quarter, the shipper would affix the seal to the rear door, that trailer would be received at the ramp, *or* the trailer received under seal." (Emphasis supplied.)

The above testimony does not establish a custom and is too indefinite to form the basis of a finding that the shipper sealed these trailers in light of paragraph 6 of the Stipulation filed October 16, 1972, describing Plan 2–1/4 in detail without any reference to the sealing of the trailers. See pages 106, 107, including footnotes 11–13.

9. Whether this determination was intended to be a finding of fact or a legal conclusion is not entirely clear. No mention of whether the contents of each of the trailers was "open and visible" was made in the district court's initial presentation of facts, after which the district court observed that "[s]ince these facts are not in dispute there is presented solely an issue of law as to whether the plaintiff has provided sufficient proof to establish that the hams were in good condition at the time they were turned over to the carrier." 329 F.Supp. at 1118. The district court then declared:

"We are impelled to conclude that a distinction must be drawn between those cases in which the merchandise being shipped were open to inspection and visible. Tuschman v. Pennsylvania Railroad Co., supra, and a situation wherein a loaded and sealed trailer is delivered to a carrier. Lincoln Farm Products Corp. v. Central Railroad Company of New Jersey, 81 N.J.Super. 161, 195 A.2d 200, supra.

"It seems to us that when the contents of a shipment are open and visible to inspection, the "apparent good order" notation establishes a prima facie case. We are not persuaded that this rule is applicable to the circumstances that prevail here. Where merchandise is sealed in a trailer, and the contents are not open and visible, the plaintiff must establish by direct evidence that the goods were delivered to the carrier in good order."

We assume, for purposes of this decision, that the district court has made a finding of fact that the contents of the trailers were not "open and visible," but note that F.R.Civ.P. 52(a) requires that the trial court "shall find the facts specially and state separately its conclusions of law thereon." *See* Pepi, Inc. v. Helcar Corp., 458 F.2d 1062 (3d Cir., 1972).

conference was held in September 1972 [10] and, thereafter, a supplemental stipulation was filed at the direction of this court (see F.R.A.P. 10(e)) amplifying the description of Plan 2–¼,[11] which had been contained in the trial court record in a one-sentence stipulation (see note 8 above).

Because the comments of counsel at the September pre-hearing conference (see note 8 above) and the Stipulation and statements [12] thereafter filed make clear that there is no agreement between counsel on the facts concerning the sealing of these trailers and the existence or nonexistence of a "cus-

10. Due to the incomplete and ambiguous testimony at the trial describing Plan 2–¼ and the condition of the trailers when delivered to the carriers, the possibility of supplementing the record through stipulation or otherwise with (1) a more complete description of this plan, which constituted a "tariff" referred to in the bill of lading, and (2) a statement of the condition of the trailer door seals and the visibility of the trailer contents at the time of delivery to the carrier was recognized in paragraph C of the order directing that these appeals be resubmitted to the panel. This paragraph C provided:

"C. A pre-hearing conference will be held at a date to be set in early September by a later order of the court for discussion of the factual and legal issues relevant to determination of the district court action, including the following:

"1. Was any part of the contents of the trailer 'open and visible' in view of the testimony of Mr. Roeder that the door to the trailer could be easily opened and other evidence in the record? If some part of the contents was open and visible, did the damage alleged by Blue Bird result, in whole or in part, from a cause which would have been apparent from a reasonable inspection of the contents in light of the manner in which the contents were loaded?

"2. Is the carrier bound by the representation in the bill of lading that the 'property described below' was recieved 'in apparent good order' when no statement was placed on such bill that the contents of the trailer were not subject to inspection?

"3. Is the trailer a 'package' within the meaning of the phrase '(contents and condition of packages unknown)' in the bill of lading?

"4. Does the phrase 'subject to the classifications and tariffs in effect on the date of the issue of this Bill of Lading' in the bill of lading affect the duty of the carrier to make an inspection of the contents of the trailers?"

11. Paragraph 6 of the Stipulation filed in this court on October 16, 1972, pursuant to the order of the panel at the pre-hearing conference (pp. 39–40), contains this language:

"6. Under Plan II–¼ the railroad supplies a trailer at consignor's loading point. The trailer is then loaded by the consignor, picked up by the railroad and transported to its ramp, carried to the railroad ramp nearest the consignee, and removed from the flatcar for pick up at the railroad ramp by the consignee. The trailer is then transported by the consignee from the railroad ramp to the consignee's door and is unloaded by the consignee and then returned empty to the railroad.

"The items which set forth provisions applicable to the plan generally known as Plan II–¼ are items 28046–C, at page 103 of Supplement 42 of tariff 450–D, and item 3208–E of supplement 42 to tariff 450–D. Item 28046–C provides, *inter alia*, that the consignor will perform the loading of cargo into the trailer at the point of origin. The other provisions applicable to Plan II–¼ are set forth in item 3208–E. . . ."

Since the parties concede that the hams were shipped pursuant to Plan 2¼ (note 7 above), the language "subject to the classifications and tariffs in effect on the date of issue of this Bill of Lading" makes the terms of the tariff applicable. See, *e. g.*, Central of Georgia Ry. Co. v. Griner & Rustin, 33 Ga.App. 705, 127 S.E. 878, 880–881 (Court of Appeals of Georgia 1925).

12. Pursuant to the following paragraph 8 of the Stipulation filed in this court (see note 11 above), plaintiff-appellant and defendant-appellee each filed a STATEMENT in this court on October 16, 1972:

"8. The parties differ as to whether certain other items in tariff 450–D and the supplements thereto are relevant to the subject matter before the Court, and it is agreed that each party may present to the Court, in addition to this Stipulation, a statement setting forth those items in tariff 450–D and its supplements which that party feels should be called to the attention of the Court."

tom in the industry for the party loading the shipment into the trailer to place its seal upon the trailer,"[13] we have concluded that the equivocal last sentence of Mr. Roeder's testimony quoted in note 8 above does not constitute a sufficient evidentiary basis to support a finding that these trailers were sealed in view of the burden resting on the carrier to come forward with evidence showing a sealing of the trailers, making the condition of their contents non-apparent when received, under *Tuschman* above at page 4. Since 1966 Mr. Roeder has been assigned to Philadelphia and the trailers were delivered to the carrier in the midwest in 1968. As stated by Judge Aldisert, speaking for the court, in Krasnov v. Dinan, 465 F. 2d 1298, 1302 (3d Cir. 1972), a finding bearing "no rational relationship to the supporting evidentiary data" is clearly erroneous.[14] Hence there was no proper basis for the conclusion of the district court that no part of the contents of the trailers was "open and visible,"[15] as well as the conclusion that the shipper cannot establish his prima facie case by means of the "apparent good order" representation in the bill of lading.[16]

The district court received evidence on many factual issues which it did not determine[17] because of its findings that the contents of the trailer were not open

13. See penultimate sentence of STATEMENT BY APPELLEE filed October 16, 1972.

14. See also Chalk v. Beto, 429 F.2d 225, 227 (5th Cir. 1970); Transport Mfg. & Equip. Co. v. Fruehauf Trailer Co., 295 F.2d 223, 227 (8th Cir. 1961); 9 Wright & Miller, Federal Practice & Procedure, Civil § 2585 at pp. 733–734 (1971).

15. The district court apparently did not realize that the facts recited in this language were "in dispute": "merchandise is sealed in a trailer, and the contents are not open and visible" (329 F.Supp. at 1118).

16. On remand it would appear appropriate for the district court to have the record before it supplemented and to make new findings of fact and conclusions of law on various issues, including these (see F.R. Civ.P. 59(a) and 54(b); 5A Moore's Federal Practice ¶ 52.13 at 2765–2766):

A. Was any part of the contents of the trailer "open and visible" in light of the time and condition of its being sealed and the party responsible for such sealing?

B. Is there a custom governing the sealing of such trailers shipped under Plan 2–¼ (see note 13 above)?

If the trailer was sealed with a strong lock by the shipper, the district court would appear to have been correct in its conclusion that the contents of the trailer were "not open and visible," 329 F.Supp. at 1118, and, hence, the defendant was not bound by the "apparent good order" representation in the bills of lading. See Armour Research Foundation of Ill. I. of T. v. Chicago R. I. & P. RR., 311 F.2d 493, 494 (7th Cir. 1963). On the other hand, if easily removable "metal bands" were used to seal the trailer or the seals were placed by the carrier, such representation may have been sufficient to make out a prima facie case. See, e. g., Yeckes-Eichenbaum v. Texas Mexican Railway Co., 165 F.Supp. 204, 206–207 (S.D.Tex.1958), rev'd on other grounds, 263 F.2d 791 (5th Cir. 1959).

Also, the nature of the lock on the trailer door and the party responsible for it might require the conclusion that the "apparent good order" representation was negatived by the language "(contents and condition of contents of package unknown)." *Cf.* Serrano v. United States Lines, 238 F.Supp. 383, 387 (S.D.N.Y. 1965); Glass-Tite Industries v. Spector Freight Systems, 102 R.I. 301, 230 A.2d 254 (1967). We agree with Judge Friendly that the question of what constitutes a package "demands a solution better than the courts can afford." See Leather's Best, Inc. v. S.S. Mormaclynx, 451 F.2d 800, 814 (2d Cir. 1971); Rules, Regulations, and Practices of Regulated Carriers With Respect to the Processing of Loss and Damage Claims, ICC Ex Parte No. 263, 340 I.C.C. 515, 606–613 (1972). It would appear that a revision of the normal language now used on bills of lading would be appropriate for Trailer-On-Flat-Car (TOFC) service, which has proved beneficial to rail carriers, shippers, and the public. See Substituted Service in Piggyback, 322 I.C.C. 301, 307, 322 (1964).

17. The district court noted that (329 F. Supp. at 1118):

"This disposition obviates the necessity for any discussion of the other points raised."

and visible. For example, there was testimony indicating that a visual inspection at the point of shipment would not have disclosed the defects in the hams because spoilage is caused by a micro-organism not apparent to the naked eye, even though present in sufficient quantity to effect such spoilage. This contention is opposed by plaintiff-appellant. Also, because of the rear door on the trailer and the manner of loading, there was testimony that only the hams adjacent to those doors would have been subject to examination.

For the foregoing reasons, the district court judgment will be vacated and the case remanded for further proceedings consistent with this opinion.

ALDISERT, Circuit Judge (dissenting).

This is the second time this panel has considered this appeal. When it was first before us, the majority filed an opinion reversing the district court, charging that court with making a finding which was clearly erroneous. I filed a dissenting opinion. Following a petition for rehearing, there was a reconsideration by the same panel. The majority now find as clearly erroneous that which they specifically found in their first opinion as "not clearly erroneous." I again dissent. This time I dissent not only from the conclusion reached by the majority but also the method utilized to reach it.

This appeal requires review of a non-jury determination that a shipper failed to establish a *prima facie* case that shipments of hams were in good condition at the time of delivery to a railroad carrier. At trial, the shipper relied upon an acknowledgment in the railroad's bill of lading that the goods were "in apparent good order." The railroad contended that this acknowledgment in the bill of lading fails to satisfy the *prima facie* evidence rule because the phrase refers only to shipments "which were open to inspection and visible," Tuschman v. Pennsylvania Railroad Co., 230 F.2d 787, 791 (3d Cir. 1956), whereas here the hams were received by the railroad in sealed trailers.

The district court found that the goods were loaded into trailers by the shippers, and that these trailers were then sealed and placed on the railroad's freight cars for transportation. Based on its finding that the trailers were sealed, the court concluded that the railroad was not bound by the "apparent good order" statement on the bill of lading because "[w]here merchandise is sealed in a trailer . . . the contents are not open and visible." 329 F. Supp. 1118.

The majority determine that application of the clearly erroneous rule dictates rejection of this critical finding. When this appeal was before this panel for original consideration, the majority stated that "the district court's finding that the trailers were 'sealed' by the shipper before delivery to the carrier is supported by substantial evidence and is not clearly erroneous." The majority properly observed in their first opinion that the "later stipulation of the parties concerning Plan 2–¼ did not by its terms negate the testimony of Mr. Roeder." The majority now hold there is not "a sufficient evidentiary basis to support a finding that these trailers were sealed." (page 107.)

The majority attempt to justify this oscillation by ascribing some significance to certain statements made by appellate counsel, not at trial in the district court, but adduced at a pre-argument hearing conducted after the original decision by this court, thirteen months after the district court trial took place. I am in total disagreement with this approach and would affirm the judgment of the district court.

What divides this court, after reconsideration, is basically the same difference in jurisprudential philosophy which divided it upon initial consideration. Ours is a fundamental difference in what we perceive to be the appropriate role of an appellate court in reviewing facts found by a trial court sitting without a jury. Regretfully, there is very

little in the approach taken by the majority with which I can generate even a modicum of agreement.

The district court observed:

Critical to our decision are these facts. The rail carrier furnishes a piggyback trailer to the shipper, who cools and loads the shipment in a trailer which he is required to precool. The shipper then seals the trailer. The trailer is then delivered to the piggyback train for cross country transit.

329 F.Supp. at 1117–1118.

The majority view, as clearly erroneous, the finding that the trailers were sealed. This was an important finding, for it was on this basis that the district court was able to draw the distinction "between those cases in which the merchandise being shipped were open to inspection and visible. Tuschman v. Pennsylvania Railroad Co., [230 F.2d 787, 3d Cir. 1956], and a situation wherein a loaded and sealed trailer is delivered to a carrier. Lincoln Farm Products Corp. v. Central Railroad Co. of New Jersey [81 N.J.Super. 161, 195 A.2d 200 (1963)]." 329 F.Supp. at 1118.

I find sufficient evidence in the record to sustain the trial court's finding that the trailers were sealed. As the majority concede: (1) the shipments were made under "Plan 2–¼" (page 104); and (2) it was the uncontradicted testimony of Mr. Roeder, a witness for the railroad: "In a plan two and a quarter, the shipper would affix the seal to the rear door, that trailer would be received at the ramp, or the trailer received under seal."

Notwithstanding the uncontradicted record before the district court, the majority would by judicial fiat distort the trial record and infect it with dubious matters adduced at a F.R.A.P. 33 prehearing conference before an appellate court. With all due respects, I cannot detect the faintest tint of the relevancy of a post-trial, post-appellate argument disagreement "between counsel on the facts concerning the sealing of these

trailers." The function of an appellate court is to review only the record which was before the district court in order to determine whether that court committed error. Thus, I consider it highly improper for an appellate court to consider any evidence, stipulation, or statements of counsel which were not before the trial court at the time the decision under review was made. F.R.A.P. 10. Hunt v. Local Board No. 197, 438 F.2d 1128, 1146 (3d Cir. 1971), (dissenting opinion, Aldisert, J., joined by Van Dusen, J.).

Yet, that is precisely what the majority has done in reaching its conclusion. In an attempt to fashion some basis for the conclusion that there was insufficient evidence at trial "to support a finding that these trailers were sealed" (page 107), the majority rely on matters presented to an appellate court which were not before the district court. They rely on "comments of counsel" and "the Stipulation and statements thereafter filed [which] make clear there is no agreement between counsel on the facts concerning the sealing of these trailers and the existence or non-existence of a 'custom in the industry for the party loading the shipment into the trailer to place its seal upon the trailer,' . . . ." (pages 106, 107.) Moreover, even if such a procedure did not offend my concepts of appellate review, the substance of post-trial disagreement of facts by trial counsel is totally inconsequential.

In concluding "there was not a sufficient evidentiary basis to support a finding that these trailers were sealed," (page 107) the majority pointedly ignore Mr. Roeder's testimony:

Q. Do you ever break the seals on *those* trailers?

A. Once in a while we do break the seals.

Q. For what purpose would you break the seals?

A. [A description of the circumstances.]

\*     \*     \*       \*     \*

Q. Do you inspect all the loads that come into Philadelphia?

A. No, we don't.

Q. Where would that notation be if the seal were broken?

A. We would make a notation on the waybill, and we would also make a notation in our seal record book.

Q. If you know, were the seals broken in any of *these four cases?*

A. Not to my knowledge.

(Record at 132–133.) (Emphasis supplied.)

The irrefutable and controlling fact is, as the majority explicitly conceded in their original opinion, that no evidence was introduced at trial to offset the critical evidence that the trailers were shipped under Rule 2¼, and Mr. Roeder's testimony that the trailers shipped under Rule 2¼ were sealed.

Accordingly, I would affirm the judgment of the district court.