RIO GRANDE & E. P. R. CO. v. T. A. AUSTIN & CO.

No. 1311—5401.

Commission of Appeals of Texas, Section A.

March 5, 1930.

Hicks, Hicks, Dickson & Bobbitt, of San Antonio, and Yale Hicks, of Laredo, for plaintiff in error.

Robert G. Harris, of San Antonio, for defendant in error.

SHARP, J.

T. A. Austin & Co. instituted this suit in the county court at law of Bexar county against the Rio Grande & Eagle Pass Railroad Company, and alleged that on or about the 15th day of February, 1927, at Laredo, Tex., T. A. Austin & Co. delivered to the railroad company for shipment over the Rio Grande & Eagle Pass Railroad Company, and other connecting lines of railroads, 864 baskets of mustard to St. Louis, Mo., and that the railroad company issued a bill of lading therefor, and that the shipment of mustard was damaged by reason of the negligent handling of same by the shipper.

The railroad company answered by general demurrer, special exceptions, and general denial, and that, if the mustard deteriorated in value during the shipment, such fact was the result of the condition in which said mustard was loaded at the initial point of shipment or to the inherent nature of the mustard, or to both of said facts.

The case was submitted to a jury upon special issues, which are as follows:

"Question No. 1: At the time of the delivery of said mustard greens to the defendant railway company, on February 15, 1927, were said greens of good, first-class quality, grade and condition? Answer 'Yes' or 'No.'

"We, the jury, answer: Yes.

"Question No. 2: If you have answered the foregoing in the affirmative, but not otherwise, then were said mustard greens delivered to the consignee thereof at St. Louis. on February 19, 1927, in a damaged condition showing badly yellow throughout? Answer 'Yes' or 'No.'

"We, the jury, answer: Yes.

"Question No. 3: If you have answered the foregoing question in the affirmative, but not otherwise, then was the proximate cause of the said condition in which said mustard greens were in at said time and place inquired about in the preceding question (a) the result of the condition in which said mustard greens were in at the time same were loaded at point of origin; (b) the result of the inherent nature of said mustard greens? Answer 'Yes' or 'No.'

"We, the jury, answer: (a) No; (b) No.

"Question No. 4: If you have answered either subdivision (a) or (b), of the foregoing question, in the negative, but not otherwise, then (a) what would have been the market price and value of said mustard greens, at St. Louis, on February 19, 1927,

had same arrived at said time and place in the same condition same were in when delivered to the defendant railway company on February 15, 1927; (b) what was the market price and value of said mustard greens, at St. Louis, on February 19, 1927, in the condition same were in upon their said arrival? Answer, stating said respective prices and values.

"We, the jury, answer: (a) $993.60; (b) $522.20."

Judgment was rendered for Austin & Co. against the Rio Grande & Eagle Pass Railroad Company in the sum of $471.40, together with interest thereon. The railroad company appealed to the Court of Civil Appeals for the Fourth Supreme Judicial District at San Antonio and the case was affirmed. 12 S.W. (2d) 1070.

The railroad company made an application to the Supreme Court for a writ of error, which was granted. There was introduced in evidence a uniform straight bill of lading prescribed by the Interstate Commerce Commission.

■■ Counsel for the railroad company in due time criticised the court in submitting subdivision (a) in question No. 4, above set out, in that it submits to the jury an incorrect measure of damages applicable to this case. We sustain this contention. This cause of action arose on an interstate shipment and the opinions of the Supreme Court of the United States govern the rules of law pertaining to same. Chicago, Milwaukee & St. Paul Ry. Co. v. McCaull-Dinsmore Co., 253 U. S. 97, 40 S. Ct. 504, 64 L. Ed. 801; Cincinnati, New Orleans & Tex. Pac. Ry. Co. v. Rankin, 241 U. S. 319, 36 S. Ct. 555, 60 L. Ed. 1022, L. R. A. 1917A, 265; Gulf, C. & S. F. Ry. Co. v. Texas Packing Co. et al., 244 U. S. 31, 37 S. Ct. 487, 61 L. Ed. 970; Cleburne Peanut & Products Co. v. M., K. & T. Ry. Co. (Tex. Com. App.) 221 S. W. 270; Galveston, H. & S. A. Ry. Co. v. Licata (Tex. Com. App.) 280 S. W. 540; Missouri Pacific R. R. Co. v. Alma Cash Store, 168 Ark. 823, 271 S. W. 453.

In the case of the Chicago, Milwaukee & St. Paul Ry. Co. v. McCaull-Dinsmore Co., 253 U. S. 97, 40 S. Ct. 504, 64 L. Ed. 801, supra, the Supreme Court of the United States in the opinion says: "This is an action for the loss of grain belonging to the plaintiff and delivered on November 17, 1915, to the defendant, the petitioner, in Montana, for transportation to Omaha, Nebraska. The grain was shipped under the uniform bill of lading, part of the tariffs filed with the Interstate Commerce Commission, by which it was provided that 'the amount of any loss or damage for which any carrier is liable shall be computed on the basis of the value of the property at the place and time of shipment under this bill of lading, including

freight charges, if paid.' The petitioner has paid $1,200.48, being the amount of the loss so computed, but the value of the grain at the place of destination at the time when it should have been delivered, with interest, less freight charges, was $1,422.11. The plaintiff claimed the difference between the two sums on the ground that the Cummins Amendment to the Interstate Commerce Act made the above stipulation void. The District Court gave judgment for the plaintiff, 252 F. 664, and the judgment was affirmed by the Circuit Court of Appeals, 260 F. 835.

In the foregoing opinion, the judgment of the District Court and Circuit Court of Appeals was affirmed by the Supreme Court of the United States.

In the case of Gulf, C. & S. F. Ry. Co. v. Texas Packing Co. et al., 244 U. S. 31, 37 S. Ct. 487, 489, 61 L. Ed. 970, supra, the Supreme Court of the United States, in rendering that opinion, says: "Apart from the stipulation of these bills of lading, the ordinary measure of damages in cases of this sort is the difference between the market value of the property in the condition in which it should have arrived at the place of destination and its market value in the condition in which, by reason of the fault of the carrier, it did arrive. New York, L. E. & W. R. Co. v. Estill, 147 U. S. 591, 616, 13 S. Ct. 444, 37 L. Ed. 292, 304. The stipulations of these bills of lading changed this rule in the requirement that the invoice price at the place of shipment should be the basis for assessing the damages."

In the case of Missouri, Pacific Ry. Co. v. Alma Cash Store, 168 Ark. 823, 271 S. W. 453, 454, supra, the Supreme Court of Arkansas, in that opinion, says:

"The alleged erroneous instruction given by the court on the measure of damages is as follows:

"'The amount of any loss or damage for which any carrier is liable shall be computed on the basis of the value of the property at the place and time of shipment under the bill of lading, including the freight charges if paid. * * *'

"The bills of lading under which the several cars were shipped contained the following condition:

"'The amount of any loss or damage for which any carrier is liable shall be computed on the basis of the value of the property at the place and time of shipment under this bill of lading, including the freight charges, if paid.'

"The court based its instructions as to the measure of damages applicable to the facts in the case upon the condition aforesaid contained in the several bills of lading. This provision in the bills of lading is an attempted limitation upon the liability of common carriers, and is contrary to the Cum-

mins Amendment to the Interstate Commerce Act of March 4, 1915, 4 Fed. Stat. Ann. (2d Ed.) 506 (U. S. Comp. St. §§ 8592, 8604a [49 USCA § 20]). Chicago, Milwaukee & St. Paul Ry. Co. v. McCaull-Dinsmore Co., 253 U. S. 97, 40 S. Ct. 504, 64 L. Ed. 801.

"The correct rule as to the measure of damages in interstate shipments of perishable commodities caused through the negligence of the common carrier is the difference in the market value of the commodity at the point to which it was shipped at the time and in the condition it should arrive there and at the time and in the condition it actually arrived at the point of destination."

The testimony introduced by the railroad company tends to show that the car in which the mustard was shipped was properly iced from point of shipment to its destination, and that there was no unusual delay in the shipment. No issue covering either question of insufficient icing of the car or any delay in the shipment was submitted to the jury, nor was any such issue requested.

The record further shows that the shipment of mustard reached St. Louis about 8 o'clock a. m. on February 19, 1929, and the shipper notified the consignee of the arrival of the car, and the consignee requested that the car be diverted to another track, and the car reached that track about noon of that day. This was Saturday, and the unloading of the car did not commence until about noon on February 21st. The consignee did not place any ice in the bunkers of the car after receiving it, and the mustard was never repacked. The car was completely unloaded on February 24th.

Marsh, the consignee, further testified as follows: "The mustard was sold to various dealers in produce trade in lots ranging from one to seventy-five baskets at prices ranging from 25 cents to $1.25 per basket, depending on the condition, thirty-three baskets of mustard being dumped on account of being worthless, fifty-seven separate sales being made in disposing of the mustard of this car. The total amount realized from the mustard was $522.20. The last sale was made February 24th. * * * The market value of mustard in car lots of good, fresh, green quality and sound condition at St. Louis, Missouri, on Saturday, February 19, 1927, and on Monday, February 21, 1927, was from $1.15 to $1.25 per bushel basket. The car was not delivered in time for the jobbing market February 19, 1927, and could not be handled until Monday, February 21st. I am acquainted with the market value of mustard in damaged condition for the days mentioned,

Saturday, February 19th and Monday, February 21, 1927. The market value of the mustard in the car in question was from $.35 to $1.00 per basket, depending on its condition. The amount received by G. A. Marsh Company for the mustard was $522.20."

The consignee was further permitted to testify that he sold the mustard from the car, which required four days, and attached to his depositions a statement of the sales made from time to time after February 21st. His statement as to the sales made aggregate the sum of $522.20, and the jury, in answering the foregoing special issues, found the exact amount stated by consignee in his statement of the sales made. He further testified that, when the shipment of mustard was received, it was in bad condition, as a considerable portion visible on the first examination had turned yellow. There is no testimony in the record tending to show to what extent the mustard deteriorated in value, from the time it was received by the consignee on the 19th and 21st days of February up to the time it was finally sold. The railroad company, by appropriate assignment, complains of the admissibility by the trial court of the testimony of Marsh, the consignee, with reference to his sales from time to time after February 21st, as being inadmissible, misleading, and prejudicial.

It is the rule that the carrier is only liable in damages to the shipper for such deterioration in the mustard as had occurred up to the time it delivered same to the consignee, and is not liable for any damages by reason of deterioration occurring after such delivery. We are of the opinion that the court committed error in permitting this testimony to go to the jury.

In view of the fact that this case will be reversed and remanded, we pretermit a consideration of the other matters complained of, because they will not likely arise upon another trial.

For the reasons herein stated, we recommend that the judgment of the Court of Civil Appeals and the trial court be reversed, and this cause be remanded to the trial court for another trial.

GREENWOOD and PIERSON, JJ.

Judgments of the county court and Court of Civil Appeals are both reversed, and cause remanded, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.