**KARABAGUI et al.**

v.

**THE SHICKSHINNY et al.**

**KUPFERMANN et al.**

v.

**THE SHICKSHINNY et al.**

United States District Court
S. D. New York.

July 2, 1954.

100

Bigham, Englar, Jones & Houston, New York City, for libelants S. B. Penick & Co. and others.

Hill, Rivkins, Middleton, Louis & Warburton, New York City, for libelants Karabagui and others and Kupfermann.

J. Edward Lumbard, Jr., U. S. Atty., New York City, for the United States. Tompkins, Boal & Tompkins, New York City, of counsel.

MURPHY, District Judge.

These are many libels, consolidated under the above captions for purpose of trial as arising out of the same voyage, for damage, shortage and non-delivery of cargo and personal effects aboard a vessel, that have been tried to the court and the following are made

### Findings of Fact

1. Libelants are owners, or representatives of the owners, of various shipments of cargo and personal effects, carried on the S.S. Shickshinny from the ports of Ras Tanura, Khurramshahr and Basrah, in the Persian Gulf area, to New York in a voyage terminating in New York on April 23, 1946. There are a number of libels (numbered as claims 1 to 65, with some numbers having been

withdrawn) asserting various damage, shortage or nondelivery under about 123 bills of lading. Certain of these suits commenced in other districts in accordance with the venue provisions of the Suits in Admiralty Act have been transferred or deemed transferred by agreement to this district.

2. The goods which are the subject of these actions arrived at the respective ports of shipment by various means of transportation from the interior of Iran and remained in the custody of the shipper until laden aboard on the dates hereinafter mentioned.

3. Respondents are the Isthmian Steamship Company, berth agent for the carrier, the United States, the South Atlantic Steamship Line, owner of the S.S. Shickshinny, and the United States of America, her bareboat charterer and operator, at all times hereinafter mentioned, the latter being sued pursuant to provisions of the Suits in Admiralty Act, 46 U.S.C.A. § 741 et seq.

4. The cargo and personal effects which are the subject of this suit consisted principally of rugs, wool and the skins of lambs, goats and sheep. In addition, there were walnuts, and cummin and quince seeds. The principal damage to these items was caused by fresh water. Other damage resulted from salt water, stains of fuel oil and tar, non-delivery of whole packages, short delivery of some, difference of grade or quality in others, and the penetrative and abrasive effect of hook holes and chafing.

5. The Shickshinny arrived at Khurramshahr at 12:30 A.M. on March 13, 1946, after a voyage from New York, commencing in December, 1945, and terminating with unloading at Ras Tanura. It rained intermittently at Khurramshahr from the time of arrival until March 14. At 7:30 P. M. on March 13, the vessel loaded wet dunnage in all of its five holds. At 8:00 A. M. on March 14, loading of cargo commenced and continued until 9:00 A. M. on March 19. This cargo, loaded from open lighters which had been awaiting the vessel's arrival, was placed in all five holds.

6. Bills of lading covering 90 shipments from Khurramshahr were issued, 61 for claims numbered 1 through 34, and 29 for claims numbered 36 through 65. Notations on 33 of these bills indicate that the shipments or some designated or undesignated portion of them were wet at the time of receipt. Various other bills indicated that shipments or portions of them were defective in some manner relating to their packaging.

7. The Shickshinny arrived at Basrah at about 2:00 P.M. on March 19, commenced loading there at 8:30 P.M. and left on March 24, 1946. There was no rain at this port between the times of arrival and departure. Cargo taken aboard from lighters was stowed in the 'tweendecks generally above the Khurramshahr cargo, and also in No. 1 lower hold. None of the 30 shipments loaded at this port was indicated in the bills of lading to be wet, although notations therein refer to various defects in packaging which included old stains.

8. An additional shipment of five packages of personal effects (claim number 64) had been loaded as part of two shipments at Ras Tanura. No damage was indicated on its bill of lading.

9. From no port of shipment did any bill of lading specifically indicate damage to cargo at time of its receipt of stains from fuel oil or tar, penetrations from hookholes, abrasions from chafing, or, of course, missing packages in whole or part.

10. The Shickshinny, having left Basrah on March 24, stopped and opened a single hatch (No. 5) to take on mail at Port Said, then continued her voyage without event until arrival at Quarantine in New York on April 23. Following fumigation in the next few days, the vessel went alongside the pier to discharge its cargo on April 30.

11. At that time, it was found that there was leakage of oil in the No. 4 'tweendeck which had spilled over the manhole into the lower hold and that there was an elliptical hole, 4″ x 2″, in a sounding pipe to the No. 4 starboard well at the same level.

12. Cargo surveys held on Pier No. 4, Staten Island, and elsewhere disclosed damage or non-delivery in connection with goods shipped under some 123 bills of lading.

13. With respect to non-delivery of whole packages, respondent United States did not sustain its burden of proving its exercise of due diligence to those libelants whose bills of lading indicate a greater number of packages than that delivered in New York, and respondent United States now concedes its liability in this respect.

14. With respect to those items stained by fuel oil, respondent United States did not sustain its burden of proving its exercise of due diligence to those libelants whose goods were thus delivered in New York, and now concedes its liability in this respect.

15. With respect to those items penetrated apparently by hooks, respondent United States did not sustain its burden of proof of exercise of due diligence to those libelants whose goods were delivered thus damaged in New York.

16. With respect to short delivery allegedly due to pilferage of some packages, and damage due to tar stains and chafing, on the basis of all the evidence, such alleged loss and damage did not occur while such goods were in the custody and care of the respondents.

17. With respect to damage caused by water, fresh or salt, respondent United States did not sustain its burden of proof of exercise of due diligence to those libelants whose goods were received by the carrier under bills of lading that did not indicate specifically their wet condition, but which goods were outturned damaged by water. The fault of respondent in this respect consists of failure to exercise due diligence in commingling cargo noted by it to be in wet condition with cargo not so noted, and by stowage on wet dunnage, and failure to renew a damaged sounding pipe so as to prevent leakage of water.

18. With respect to damage caused by water, fresh or salt, to those goods of libelants noted as in a wet condition at time of receipt by the carrier, such alleged loss and damage did not occur while such goods were in the custody and care of respondents.

## Discussion

 The heart of the problem presented by these multifarious suits is an evidentiary one: what was the amount, quality and condition of the goods shipped at time of receipt by the carrier as compared with their outturn. The principal and almost exclusive proof of quantum and quality at time of delivery to the carrier are the bills of lading. These, under the governing Carriage of Goods by Sea Act constitute "prima facie evidence of the receipt by the carrier of the goods as therein described",[1] with respect to "the number of packages or pieces"[2] and also their "apparent order and condition."[3] Prima facie evidence is, of course, like all evidence, susceptible to rebuttal; but unrebutted, it remains sufficient as a matter of law to establish the ultimate proposition it purports to prove.[4] It goes without saying that such evidence can only be overcome by contrary proof, and not by mere surmise and speculation.

 Clearly as to quantum of separate packages and pieces delivered to the carrier, there is no proof of sufficient probative force to contradict the amounts noted in the bills of lading, and accordingly failure of the carrier to redeliver identical numbers of packages must be attributed to their loss while in his custody.

 A more troublesome question is presented by the condition of the goods within each package, including diminution of both quality and quantity. There may be significant differences between

---

1. 46 U.S.C.A. § 1303(4).
2. Id. § 1303(3) (b).
3. Id. § 1303(3) (c).
4. See Kelly v. Jackson, 6 Pet. 622, at page 632, 8 L.Ed. 523.

the external order and condition of a package, apparent to shipper and carrier alike, and the order and condition of its contents, not so apparent and presumably discoverable by the shipper alone or his predecessors in handling such contents. But it would be idle to insist that there is no relationship at all between the apparent and the actual condition. The prima facie impact of the bill of lading with respect to actual condition of a shipment then must be appraised carefully in the light of many circumstances, including the nature of the goods, their history and milieu prior to delivery to the carrier, the nature of their storage aboard, as well as the practice of the carrier in making exceptions to the bill upon inspection of the package. The probative force of a clean bill of lading may well be dissipated when evidence of such circumstances attribute an actual condition of deterioration of goods outturned to substantial factors operative before their delivery to the carrier.[5] It is otherwise when the evidence of such circumstances is lacking.[6]

█ Applied here to the outturn of goods in those situations where the bill of lading was either clean, or did not suggest by any notation or exception made, the particular damage found, such appraisal of circumstances imputes to the carrier damage by fuel oil stains and holes apparently caused by hooks. The bills, replete with exceptions relating largely to poor packaging, are bereft of indication of this damage. It might be surmised that some of this damage occurred prior to the custody of the carrier; it has not been proved. In addition, there is evidence of fuel oil leakage aboard the vessel.

█ Under bills with similar omissions of damage by water, fresh or salt, the outturn of goods spoiled by wetting must be attributed to carriage aboard the vessel. This is especially the case in the light of use of wet dunnage, the commingling of cargo noted as wet by the carrier with cargo not so noted, and leakage of a sounding pipe aboard.

In those situations where the carrier inspected the goods and specifically excepted to their wet condition, principally goods loaded at Khurramshahr in the rain, it would make futile exceptions by the carrier if his liability was extended to the consequences of damage which he has been alert to point out.

█ Under all of the evidence, short deliveries of whole packages, some of them allegedly due to pilferage, has not been established, nor has damage by tar stains, chafing or abrasions been shown to have occurred while in the carrier's custody.

With respect to those items of water damage, hookholes, fuel oil stains and non-delivery, found to have occurred while the goods were under the carrier's care, respondent United States has not sustained its burden of proof of exercise of due diligence.

### Conclusions of Law

█ 1. This court has jurisdiction of the parties and subject matter of the controversy.

2. In connection with the libels relating to non-delivery of whole packages (Finding of Fact No. 13), libelants are entitled to a decree against respondent United States for such non-delivery, as follows:

| Claim No. | Non-delivered Item |
|---|---|
| 8–B | 1 bale sheepskins |
| 31–A, B, & C | 3 cases walnuts |
| 37–B | 14 bags gum tragacanth |
| 37–C | 1 bag " " |
| 47–A | 8 bales sheepskins |
| 50 | 1 bag gum tragacanth |
| 64 | 1 package of personal effects |

3. In connection with libels relating to items stained by fuel oil (Finding of Fact No. 14), libelants are entitled to a decree to the extent of damage found

---

5. The Niel Maersk, 2 Cir., 91 F.2d 932.

6. Cf. Schnell v. The Vallescura, 293 U.S. 296, 55 S.Ct. 194, 79 L.Ed. 373.

against respondent United States, as follows:

| Claim No. | Oil Stained Item |
|---|---|
| 15 | 4 rugs |
| 15–B | 43 rugs and carpets |
| 15–D | 6 " " " |
| 22–A, B | 2 carpets, 8 small rugs |
| 28 | 2 rugs in bale No. 6 |
| 38 | 3 bales carpets |
| 40–B | 2 " " |
| 41–B | 1 bale carpets (No. 43) |
| 43 | 1 bale rugs, carpets (No. 75) |
| 51 | 3 bales wool |
| 55 | 1 bale rugs, carpets (No. 64) |
| 56–A | 5 bales rugs, carpets |
| 56–B | 1 bale rugs, carpets |

4. In connection with libels relating to those items apparently penetrated by hooks (Finding of Fact No. 15), libelants are entitled to a decree to the extent of damage found against respondent United States, as follows:

| Claim No. | Items Penetrated |
|---|---|
| 1–A | Some carpets and rugs |
| 1–E | " " " " |
| 2–A | " " " " |
| 11 | " " " " |
| 17–F | " " " " |
| 17–H | " " " " |
| 17–J | " " " " |
| 22–A, B | 23 carpets and rugs |
| 30 | 5 bags quince seed |
| 34 | 10 carpets and rugs |
| 37–A | 1 bale carpets (No. 15) |
| 38 | 8 bales carpets |
| 40–A | 3 " " |
| 40–B | 1 " " |
| 42 | 2 " " |
| 43 | 4 bales carpets, rugs (Nos. 70, 71, 72 and 77) |
| 44 | 1 bale carpets and rugs |
| 45 | 2 bales carpets and rugs (Nos. 7 and 9) |
| 54 | 2 bales carpets |
| 55 | 2 bales carpets and rugs (Nos. 45 and 63) |
| 56–A | 7 bales carpets and rugs |
| 56–B | 1 bale carpets |
| 57 | 4 bales rugs |
| 60 | 2 bales carpets and rugs |
| 62 | 1 bale carpets and rugs |

5. In connection with libels relating to those items damaged by water, fresh or salt (Finding of Fact Nos. 17, 18), libelants are entitled to a decree to the extent of damage found against the United States in connection with the following claims: 1–C, D, E; 2–A, B, D, E, F; 5–A; 7; 8–A, B, E; 10; 11; 12; 13; 14–A, B; 15–A, C; 17–B, E, F, G, H, I, J; 18; 19; 20; 21–B, C, D; 22–A, B; 24–G, H; 25–A; 29–A, B, C; 30; 31–A, B, C; 34; 35; 37–C, F, H, I; 38; 40–A, B; 41–A, B; 42; 43; 44; 47–B; 48; 50; 51; 53; 54; 55; 56–A, B; 58–A, B; 60; 61; 61–B, C, D, F, G, H; 62.

6. The libels are dismissed insofar as they state claims for any other damage.

7. The libels in their entirety against respondents Isthmian Steamship Company and the South Atlantic Steamship Line are dismissed.

Decree accordingly.

Submit orders on notice.