**MISSOURI PACIFIC RAILROAD COMPANY, Appellant,**

v.

**C. E. DUNCAN, Appellee.**

No. 10921.

Court of Civil Appeals of Texas.

Austin.

Jan. 17, 1962.

Rehearing Denied Feb. 7, 1962.

Strickland, Wilkins, Hall & Mills, Mission, for appellant.

James E. Little, Edinburg, Wm. J. Condon, Mercedes, for appellee.

### RICHARDS, Justice.

Suit was brought by C. E. Duncan, appellee, against the Missouri Pacific Railroad Company, appellant, to recover damages caused by delay in the transportation of a car of cauliflower delivered to appellant at Donna, Texas for transportation in interstate commerce to Cincinnati, Ohio. The shipment should have arrived in Cincinnati for the market of February 3, 1958 but was admittedly delayed one day in transportation and arrived and was available for the market on February 4, 1958. Since it was agreed that the cauliflower was in good condition both when delivered to appellant at the point of origin and upon its arrival and delivery to the consignee at Cincinnati, the sole issue was whether there was a market decline in the value of the shipment on the Cincinnati market from February 3, 1958 to February 4, 1958.

The case was tried before a jury upon special issues who found that there was a market decline of 50 cents per crate between February 3 and February 4, 1958 and accordingly judgment was entered in favor of appellee in the sum of $210.60. Motion for new trial having been overruled, appellant excepted to the judgment and perfected its appeal to this Court.

Since this was an interstate shipment, the liability and the measure of damages are to be determined by the Interstate Commerce Act and the decisions of the courts of the United States construing it. Missouri Pacific Railroad Company v. H. Rouw Company, 258 F.2d 445, 446, cert. den. 358 U.S. 929, 79 S.Ct. 315, 3 L.Ed.2d 302 rehearing denied 359 U.S. 932, 79 S.Ct. 605, 3 L.Ed.2d 634; Rio Grande & E. P. R. Co. v. T. A. Austin & Co., Tex.Com.App., 25 S.W.2d 306, 307. The measure of damages applicable if there was a decline in the reasonable cash wholesale market value of the cauliflower from February 3 to February 4, 1958, is the difference between the reasonable cash wholesale market value of the cauliflower on the Cincinnati market on February 3, 1958 and its reasonable cash wholesale market value on the same market on February 4, 1958. Pennsylvania R. R. Co. v. Wm. H. Muller & Co., 4 Cir., 15 F.2d 535, 539, cert. den. 273 U.S. 748, 47 S.Ct. 449, 71 L.Ed. 872. The same measure of damages is applicable under Texas decisions. Texas & P. R. Co. v. Nicholson, 61 Tex. 491; Missouri K. & T. Ry. Co. of Tex. v. Webb, 20 Tex.Civ.App. 431, 49 S.W. 526, 531, no writ history; Meyer v. Thompson, Tex.Civ.App., 284 S.W.2d 384, 387, error ref. N.R.E.; 11 Tex.Jur.2d Sec. 507.

Plaintiff's appeal is based upon two points of error, the first being that the Trial Court erred in overruling appellant's motion to strike the opinion testimony of C. E. Duncan, appellee, as to the reasonable wholesale cash market value of the cauliflower on the Cincinnati market on February 3 and 4, 1958, since appellee's testimony as to the reasonable cash wholesale market

value of the cauliflower was based solely upon the price which he received for it and therefore incompetent.

Appellee testified on direct examination that in his opinion the reasonable cash wholesale market value of the cauliflower on February 3, 1958 was $3.00 per crate and on February 4, 1958 was only from $2.00 to $2.25 per crate and his testimony was based on what the cauliflower brought him and that was the value of it "what I got out of it", since his idea of market value was what he sold it for. He admitted that the consignee started the sale of the cauliflower on February 4 and that a period of ten days was required to sell it. He further testified that the value of the cauliflower on February 4, 1958 was from $2.00 to $2.25 per crate because it would be more difficult to sell a whole carload on that date and that was the reasonable wholesale market value and that forty crates of his cauliflower were sold at Cincinnati on February 4th at $3.00 per crate.

Upon cross examination the witness was asked that if he felt that the sale of the whole carload would have something to do with the market value, why did he give the market value for just a crate, to which the witness answered that he didn't have a crate to sell, he had the whole carload to sell. The witness was asked in how many instances in his experience was a solid carload commodity sold at destination by the consignee to one buyer, to which he answered that "they were not sold to one buyer" but to groups of buyers since if they were sold at one sale it would be direct to some chain store.

On further cross examination Duncan testified as follows:

"Q Do you have any record as what those quotations were on size 16 cauliflower?

"A On the third. There wasn't any quotations, but normally the 14s and 16s bring the same money in the Cincinnati market.

"Q Do you remember whether or not on February 4th, 1958, Texas cauliflower, and these crates of this character, size 14s and 16s, were quoted as Three Dollars a crate, Mr. Duncan?

"A On what date?

"Q On February 4th, 1958?

"A It could have been, but then I don't remember. I don't have it.

"Q In order to refresh your memory, I will hand you a certified copy of the U.S.D.A. market report on Cincinnati for February 4, 1958, and I will ask you to state whether or not by examining that and using it to refresh your memory you can state what the quoted market prices of cauliflower of this size and this type of crates were on the Cincinnati market on February 4, 1958?

"A Cauliflower: About steady Long Island type crts Calif 12s 3.75–4.00 Tex 12s 3.50–3.75 few high as 4.25 few 3.25 14–16s 3.00.

\*    \*    \*    \*    \*    \*

"Q What was the market quoted price there by the U.S.D.A. on February 3rd, 1958, for size 14 or 16s?

"A February 3rd?

"Q Yes, sir.

"A Cauliflower: About steady Long Island type crts Calif 12s 4.25 Tex. 12s 3.50–4.25 Mostly 3.50–3.75 14s best 3.00 fair cond 2.50.

"Q So, they agreed with you on the third; didn't they?

"A Well, yes.

"Q And you didn't agree with them on the 4th?

"A I didn't because I had cauliflower that sold for less money ac-

cording to the inspection. It was good cauliflower.

"Q But, you still based your price on what your cauliflower was sold?

"A Yes, sir."

On re-direct examination when reminded that he had stated that in his opinion the value of the shipment on February 4th was $2.00 and $2.25 per crate he was requested to explain why there was any difference in the fact that forty of the crates sold for $3.00 each but the value of the entire shipment was $2.00 and $2.25 per crate, to which the witness answered that the value was based upon the entire car and not just the crates that were sold on that particular day.

Appellant's counsel then moved to strike appellee's testimony as to the reasonable cash wholesale market value of the cauliflower on the Cincinnati market both on February 3 and February 4, 1958 upon the ground that it was apparent that appellee had testified only as to what he received for his cauliflower which was not the true test of market value, which objection was overruled.

■ It is a general rule of law that an account of sales alone is incompetent to establish the reasonable cash market value of a shipment in the condition and on the date of its arrival. Rio Grande & E. P. R. Co. v. T. A. Austin, supra; Thompson v. A. J. Tebbe & Sons Co., Tex.Civ.App., 241 S.W.2d 627, 632; Reider v. Thompson (U.S. C.A. 5th) 197 F.2d 158, 160. It is manifest from appellee's testimony that his conception of reasonable cash market value was based solely upon the price which he received at Cincinnati from the sale of his cauliflower commencing February 4, 1958 over a period of ten days as shown by his account of sales and that he had no other knowledge of the wholesale cash market value for cauliflower at Cincinnati on either February 3 or February 4, 1958 except as shown in the U. S. Department of Agri-

culture Market Reports, which he admitted were the best guide on market values.

■ Opinion evidence based solely upon the price which appellee received for his shipment was plainly inadmissible to prove or establish market value and therefore the Trial Court erred in overruling appellant's motion to strike such evidence. It is our opinion that in considering their answers to the special issues as to reasonable cash market value the jury was influenced by such inadmissible evidence to the prejudice of appellant and therefore appellant's first point of error is sustained.

For its second point of error appellant urges that the finding of the jury that the reasonable cash wholesale market value of the cauliflower on February 4, 1958 showed a market decline of fifty cents per crate is against the overwhelming weight and preponderance of the evidence.

In the charge the Court defined reasonable wholesale cash market value as follows:

"By the term reasonable cash wholesale market value as used in this charge is meant the prevailing cash wholesale market price on the market in question established by sales of cauliflower of similar quality and condition by buyers willing to buy but not required to do so and by sellers willing to sell but not required to do so."

The jury found that the reasonable cash wholesale market value on February 3rd was $3.00 per crate and on February 4th was $2.50 per crate.

The evidence as to reasonable cash wholesale market value of the cauliflower on February 4, 1958 consists of the testimony of appellee Duncan, certified copies of the United States Department of Agriculture Market Reports on the Cincinnati market for the period beginning February 3 through February 10, 1958 and the testimony of appellee's witnesses D. C. Buell and Louis Budde.

Since the testimony of appellee concerning the market value of the cauliflower on

February 4th has been fully discussed supra it is necessary to examine the other evidence offered by appellee to establish reasonable cash market value of the commodity on February 3 and February 4, 1958.

■ The United States Department of Agriculture Reports showed the quoted prices of size 14–16 cauliflower on the Cincinnati market for February 3, 1958 as "best $3.00; fair cond. $2.50." The reports for the sales on February 4, 1958 showed $3.00 per crate. The market reports, being United States Government Reports, are admissible in evidence under Art. 3731a, Vernon's Ann.Civ.St. They are also admissible on the issue of value as published market reports. Gulf, Colorado and Santa Fe Ry. Co. v. Hellis, Tex.Civ.App., 320 S.W.2d 687, 690, no writ history; 25 Tex.Jur.2d Sec. 321.

The deposition of the witness Louis Budde was offered in evidence, part by appellee and part by appellant. Budde was the traffic manager for Degaro Co. of Cincinnati, the consignee of the shipment. Budde testified that in his opinion the reasonable cash wholesale market value of the cauliflower at Cincinnati on February 3, 1958 was from $3.00 to $3.25 per crate and if it had arrived for market on the 3rd instead of the 4th it would have sold for approximately fifty cents per crate more since Monday (February 3) was the best day for sale when they could have sold at least 75% of the car; that most of the sales from the car were from February 4 to February 6 and that there were approximately 35 purchasers of the cauliflowers during the period of February 4 to February 14. He further stated that he had no independent recollection concerning the market value on the Cincinnati market other than from the United States Department of Agriculture reports and that the market value was greater on February 4, 1958 than it was at any time thereafter up to and including February 14, 1958, during which time the cauliflower had deteriorated. On cross examination Budde

stated that the reasonable cash wholesale market value on February 4, 1958 was approximately $2.75 to $3.00 per crate.

D. C. Buell, a witness for appellee, stated that he had not personally observed any sales in Cincinnati other than "side walk sales"; that he had made a memorandum of his review of the market values a day or so before preceding the trial because he could not retain market values in his mind for two or three years which review consisted of market reports including the United States Department of Agriculture Reports, prices current in the New York Reporter and his own records. Mr. Buell was employed by the H. Rouw Company but did not testify that his employer had any cauliflower for sale on the Cincinnati market at or near the dates in question.

Buell testified that the reasonable cash wholesale market value for size 16 cauliflower on the Cincinnati market on February 4, 1958 was only from $2.25 to $2.75 per crate while on February 3 it was from $3.00 to $3.25 per crate. On cross examination he stated that in arriving at his opinion as to the market value of cauliflower at Cincinnati on February 4, 1958 he understood that the grades of cauliflower actually sold on that date brought $3.00 per crate.

The witnesses Budde and Buell each admitted that he had no independent recollection as to the reasonable cash wholesale market value of the cauliflower at Cincinnati on either February 3 or February 4, 1958, based on actual sales on either of those dates, except for appellee's forty crates which were sold and brought $3.00 per crate, and that their opinions were based on the United States Agriculture Department published market reports for those dates.

■■ It is within the province of this Court to determine the sufficiency of the evidence to support the findings of the jury. Hopson v. Gulf Oil Corp., 150 Tex. 1, 237 S.W.2d 352, 358. The jury's finding

**320**

that the reasonable cash wholesale market value on February 3, 1958 was $3.00 per crate while on February 4, 1958 it was $2.50 per crate is in our opinion so contrary to the great weight of the testimony as to be clearly erroneous. Appellant's second point of error also is sustained.

The judgment of the Trial Court as to the cause of action asserted by appellee in the third count of its petition is reversed and this cause is remanded for a new trial of such count.

Reversed and Remanded.