MISSOURI PACIFIC RAILROAD
COMPANY, Appellant,

v.

ELMORE & STAHL, Appellee.

No. 13937.

Court of Civil Appeals of Texas.

San Antonio.

Sept. 12, 1962.

Rehearings Denied Oct. 10, 1962.

Sharpe & Hardy, Brownsville, Hutcheson, Taliaferro & Hutcheson, Houston, for appellant.

North, Blackmon & White, Corpus Christi, for appellee.

MURRAY, Chief Justice.

Our original opinion, filed June 27, 1962, is withdrawn and this opinion substituted in its place.

This suit was instituted by Elmore & Stahl as shipper against Missouri Pacific Railroad Company as carrier, for alleged damages to four shipments, three of which were of honeydew melons originating at Rio Grande City, Texas, and one of green peppers originating at Pharr, Texas, with destination points of the melons at Chicago, Illinois, and Boston, Massachusetts, and of the green peppers at Indianapolis, Indiana.

The trial was to a jury and resulted in judgment in favor of plaintiff on all four counts contained in the petition, from which judgment Missouri Pacific Railroad Company has prosecuted this appeal.

Appellee's petition contained four separate counts, and each of these counts, in effect, is a separate lawsuit. The first count relates to 640 crates of honeydew melons, loaded in Car ART 35042; the second relates to 640 crates of honeydew melons, loaded in Car ART 33450; the third relates to 560 crates of honeydew melons, loaded in Car ART 51395; and Count IV relates to 700 baskets of green peppers, loaded in Car ART 52223.

The cause was submitted to the jury upon nine special issues as to each count in the petition, and these issues are very similar as to each of the four counts. They vary only as to the peculiar facts of each count.

Appellant's Point Number One is as follows:

"Judgment should have been rendered in favor of the Carrier on Count I of the petition because:

"(a) The jury finding on Special Issue Number Three establishing that the carriers performed without negligence the transportation services as provided by the terms of the bill of lading and as instructed by the shipper and in a reasonably prudent manner as to matters not covered by the bill of lading or the shipper's instructions, constituted a complete defense where the shipper relied upon a prima facie case, and the carrier was not further required to prove the specific cause of the loss.

"(b) The responsibility assumed by a carrier of perishables is fixed by the agreement contained in the bill of lading in accordance with published tariffs and regulations, which are binding upon the shipper and carrier and may not be waived or varied; the tariff provisions have the force of law and constitute part of the contract between the shipper and carrier, and the effect of same is to limit and define the contractual undertaking of the carrier to carrying out the shipper's instructions and performance of transportation services without negligence.

"(c) The correct rule applicable to shipments of perishables is the same as that involving shipments of livestock, that is, the carrier is exonerated from liability upon showing compliance with the shipper's instructions and performance without negligence of transportation services; and the carrier is not required to additionally prove the cause of the shipper's loss or damage.

"(d) At common law, the carrier was under no duty to furnish special protective services such as refrigerator cars, icing or ventilation, and any duty, obligation or liability of the carrier concerning such matters depended upon the agreement between the shipper and the carrier and was entirely distinct from and could not be based upon its general liability as a common carrier."

The jury found, in answer to Special Issue No. 1, that the honeydew melons re-

ferred to in Count I were in such condition at the time the bill of lading was signed that, based upon the orders given by the shipper to the carrier for their transportation, and the reasonable performance of those orders by the carrier, they would have been reasonably expected to arrive at destination in good merchantable condition.

In answer to Special Issue No. 2, the jury found that such melons were in worse condition than would reasonably have been anticipated, based upon the condition in which they were at the time the bill of lading was signed, the orders given by the shipper to the carrier for their transportation and reasonable performance of those orders by the carrier.

■ Under the provisions of the Interstate Commerce Act, 49 U.S.C.A. § 20(11), which provides in part as follows:

"Any common carrier, railroad, * * receiving property for transportation from a point in one State or Territory or the District of Columbia to a point in another State * * * shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered * * *."

and under the evidence and findings of the jury, the shipper made out a prima facie case of liability against the carrier. 13 C.J. S. Carriers § 71, p. 131; Panhandle & S.F. Ry. Co. v. Trautmann Bros., Tex.Civ.App., 341 S.W.2d 504; Missouri-Kansas-Texas R. Co. v. Noble, Tex.Civ.App., 271 S.W.2d 146; Rogers v. Crespi & Co., Tex.Civ.App., 259 S.W.2d 928; Railway Exp. Agency v. Hueber, Tex.Civ.App., 191 S.W.2d 710; Panhandle & S. F. R. Co. v. Wilson, Tex. Civ.App., 135 S.W.2d 1062.

It is the contention of the shipper that the carrier can only defend against this prima facie cause of action by showing that the damages were due to one or more of the excepted causes at common law; viz., (1) an act of God, (2) the public enemy, (3) the act of the shipper, (4) the inherent nature of the goods themselves.

The jury found, in answer to Special Issue No. 3, that as to the honeydew melons described in Count I, the carrier performed without negligence the transportation services as provided by the terms and conditions of the bill of lading and as instructed by the shipper and in a reasonably prudent manner as to matters not covered by the bill of lading or the shipper's instructions.

In answer to Special Issue No. 4, the jury found that as to the honeydew melons described in Count I, the worsened condition on arrival was not caused by the failure of the carrier to comply with the instructions of the shipper and furnish all services provided by the terms and conditions of the bill of lading.

The jury further found, in answer to Special Issue No. 5, that the worsened condition of the melons on arrival was not in any part caused by the failure of the carrier to transport and care for the melons in a reasonably prudent manner as to all matters not covered by shipper's instructions and the bill of lading.

In answer to Special Issue No. 6, the jury found that the worsened condition of the honeydew melons referred to in Count I, at the time of their delivery at destination, was not due solely to an inherent vice existing at the time the melons were received by the carrier at Rio Grande City, Texas.

The jury further found, in answer to Special Issue No. 7, that the worsened condition of the melons at destination was not caused solely by the carrier carrying out the instructions given by the shipper to the carrier for handling this shipment.

In answer to Special Issues Nos. 8 and 9, the jury established the loss in market value of the melons due to the worsened condition at destination.

It is the contention of appellant carrier that the jury's answers to the Special Issues show that the carrier carried out the instructions of the shipper and was not otherwise negligent, and that this is a complete defense to the prima facie case established by the shipper. While it is the contention of appellee shipper that the only defense to the prima facie cause of action established by it is to show that the loss was due to one of the excepted causes set out above.

It is conceded by the parties that where an interstate shipment is involved, the liability of the carrier and the measure of damages are determined by the Interstate Commerce Act and the decisions of the Courts of the United States, construing it. See Missouri Pacific Railroad Co. v. Duncan, Tex.Civ.App., 353 S.W.2d 315; Missouri-Kansas-Texas R. Co. v. Noble, supra.

■■ There are a great many authorities discussing the question here presented, and we are of the opinion that, by the great weight of authorities, the contention of the appellee shipper is sustained. Panhandle & S. F. Ry. Co. v. Trautmann Bros., Tex. Civ.App., 341 S.W.2d 504; Missouri Pac. R. Co. v. Trautmann Bros., Tex.Civ.App., 301 S.W.2d 240; Thompson v. Bob Tankersley Produce Co., Tex.Civ.App., 289 S.W. 2d 840; Thompson v. A. J. Tebbe & Sons Co., Tex.Civ.App., 241 S.W.2d 627; Schnell v. The Vallescura, 293 U.S. 296, 307, 55 S. Ct. 194, 197, 79 L.Ed. 373; Lehigh Valley R. Co. v. State of Russia, 2 Cir., 21 F.2d 396; Compania de Vapores Insco S. A. v. Missouri Pac. R. Co., 5 Cir., 232 F.2d 657; Reider v. Thompson, D.C., 116 F.Supp. 279; Secretary of Agriculture v. United States, 350 U.S. 162, 76 S.Ct. 244, 100 L.Ed. 173; Yeckes-Eichenbaum, Inc. v. Texas Mexican Ry. Co., 263 F.2d 791, cert. den., 361 U.S. 827, 80 S.Ct. 75, 4 L.Ed.2d 70; California Packing Corp. v. The Empire State, D.C., 180 F.Supp. 19; Southern-Plaza Empress, Inc. v. Nerville, 5 Cir., 233 F.2d 264; U. S. v. Mississippi Valley Barge Line Co., 8 Cir., 285 F.2d 381; California Packing Corp. v. States Marine Corp. of Del., D.C., 187 F.

Supp. 540; Interstate Commerce Act, Title 49 U.S.C.A. § 20(11); 13 C.J.S. Carriers § 71, p. 131, § 79, p. 151. Tariff Rules Nos. 130 and 135, in no way affect the rules laid down in the above cited authorities. We refuse to follow Southern Pacific Co. v. Itule, 51 Ariz. 25, 74 P.2d 38, 115 A.L.R. 1268, wherein it is held that the carrier's liability with relation to the transportation of vegetables is the same as for livestock, because such holding is contrary to the above cited cases.

This brings us to a consideration of Count II of appellee's petition. Appellant's Point Number Two is as follows:

"Judgment should have been rendered in favor of the carrier on Count II of the petition because:

"(a) There was no evidence, or, at least the evidence was insufficient, to establish the condition, particularly the good condition, of the honey dew melons at origin.

"(b) There was no evidence, or, at least the evidence was insufficient, to establish the market value of the commodity at destination, even if the shipment had arrived without any damage; and there is not a sufficient basis for ascertainment of damages if appellee is entitled to recover the same."

■■ We sustain this point. The evidence is insufficient to support the finding of the jury that the melons were in good condition at the point of origin. The shipper relied upon the recital in the bill of lading to the effect that the melons were in apparent good condition, and the testimony of John Fillpot. The recital in the bill of lading relates only as to the condition of the outside of the crates, and this rule is not changed even though honeydew melons are so crated that a part of each melon can be seen without opening the crates. Hoover Motor Express Co. v. United States, 6 Cir., 262 F.2d 832.

John Fillpot did not inspect the melons at point of origin. He was asked the direct

question whether he could say that he saw "a single one of the melons involved in this case." He answered, "I cannot." He was in general charge of gassing and cooling the melons, but the man who actually did this work did not testify. There was no other testimony as to the condition of the melons at origin than the general statements by Fillpot. We reverse the judgment of the trial court on Count II.

Appellant's Point Number Three is as follows:

"Judgment should have been rendered in favor of the carrier on Count III of the petition because:

"(a) The jury finding on Special Issue Number One, establishing that the honeydew melons involved were not in good condition at origin, that is, they would not reasonably have been expected to arrive at destination in good merchantable condition, based upon the orders of the shipper and the reasonable performance of same by the carrier, prevented judgment for the shipper, where the shipper relied solely upon a prima facie case."

■ The finding of the jury on Special Issue No. 1, on Count III, precluded any recovery by the shipper on Count III. Missouri Pacific R. Co. v. Trautmann Bros., Tex.Civ.App., 301 S.W.2d 240; Thompson v. Bob Tankersley Produce Co., Tex.Civ.App., 289 S.W.2d 840; Albers Milling Company v. Hauptman, 9 Cir., 95 F.2d 286.

Appellant's Point Number Four is as follows:

"Judgment should have been rendered in favor of the carrier on Count IV of the petition because:

"(a) There was no evidence, or, at least the evidence was insufficient, to establish the market value of the commodity at destination, even if the shipment had arrived without damage; and

there is not a sufficient basis for ascertainment of damages, if appellee is entitled to same.

"(b) The jury award is excessive."

■ We sustain this point. Appellee in attempting to establish the market value of the peppers relied entirely upon the testimony of Ed Baker. There were no United States Department of Agriculture Market Reports introduced in evidence as to the peppers, and there were no other market reports introduced. Baker admitted that he did not know the market price of U. S. No. 1 peppers on January 26, 1958, in Indianapolis. He based his opinion as to the market value of these peppers upon the account of sales showing that some of them sold for the sum of $4.00 per basket. In the recent case of Missouri Pacific Railroad Co. v. Duncan, Tex.Civ.App., 353 S.W.2d 315, the Austin Court, speaking through Associate Justice Richards, had this to say:

"It is a general rule of law than an account of sales alone is incompetent to establish the reasonable cash market value of a shipment in the condition and on the date of its arrival. Rio Grande & E. P. R. Co. v. T. A. Austin, supra, Tex.Com.App., 25 S.W.2d 306, 307; Thompson v. A. J. Tebbe & Sons Co., Tex.Civ.App., 241 S.W.2d 627, 632; Reider v. Thompson (U.S.C.A. 5th) 197 F.2d 158, 160."

Appellee's motion for a rehearing will be overruled, and appellant's motion for a rehearing will be granted in part and overruled in part in keeping with this opinion.

Our judgment heretofore rendered herein is set aside and judgment entered in accordance with this opinion; i. e., the judgment of the trial court is affirmed as to Count I, and reversed and remanded as to Counts, II, III and IV. The costs of this appeal are taxed one-fourth against appellant and three-fourths against appellee.