HECHT, LEVIS & KAHN, INC., Libelant,

v.

S/S JAVANESE PRINCE, her engines, boilers, etc., Prince Line, Ltd., and Furness, Withy and Company, Ltd., Respondents.

United States District Court
S. D. New York.
May 7, 1962.

Hill, Rivkins, Middleton, Louis & Warburton, New York City, Proctors for libelant. John P. Conroy, New York City, of counsel.

Kirlin, Campbell & Keating, New York City, Proctors for respondents. Edward L. Smith, New York City, of counsel.

LEONARD P. MOORE, Circuit Judge (sitting by designation).

Hecht, Levis & Kahn, Inc., a New York corporation, the owner and consignee of 30 shipments of rubber shipped aboard the S/S Javanese Prince under clean bills of lading, brings this action for damages against the S/S Javanese Prince, its owner and operator, Prince Line, Ltd., a corporation of the United Kingdom of Great Britain and Northern Ireland, and Furness, Withy and Company, Ltd., a corporation of the Kingdom of Great Britain, the general agent in the United States for Prince Line, Ltd. These shipments of rubber, which came originally from plantations in Cambodia and Vietnam, were accepted for shipment at Saigon and Phompenh by agents of Prince Line. The 13 shipments from Saigon were loaded on board the Javanese Prince at Saigon on July 16 and 17, 1954. The 17 shipments from Phompenh were transhipped to Singapore aboard the S/S Larut and the S/S Northstar; the shipments aboard the Larut were received by the Prince Line's agents in Singapore on July 15, 1954, and those aboard the Northstar were received in Singapore on July 27, 1954. Except for the time these shipments were aboard the Larut and the Northstar, they were in the hands of agents of the Prince Line from the time of their delivery in Phompenh until they arrived in the United States.

A bill of lading for each shipment was issued by Prince Line agents. The bills of lading stated that the goods were received in "apparent good order and condition". However, when these shipments were unloaded in Boston and New York, many were found to be dry water stained and a further examination showed that some of the bales were affected by mould, bleaching, and moisture; there was an adherence of deteriorated separating paper to some of the bales; some were oil stained; and some were damaged by foreign substances. Except for the oil stains

and foreign substances, all of the damage resulted from the rubber coming into contact with fresh water.

The rubber in each of the shipments was packed in bareback bales, that is, individual sheets of rubber were compressed into a bale which was wrapped by a sheet of equivalent grade rubber. No other wrapping was placed around the bales, but each bale was coated with talc prior to loading to prevent fusion in stow.

The 30 shipments of rubber were stowed in various places throughout the ship. On July 24, 1954, while the Javanese Prince was at Singapore, a fire occurred in a shipment of kapock in No. 5 'tween deck. Water and steam were introduced into No. 5 hold to extinguish the fire and, although none of libelant's cargo was stored in this hold, some of the water may have entered into No. 4 hold where part of libelant's cargo was stowed. Wet dunnage and cargo battens were subsequently removed from No. 5 hold but there is no evidence that this was used in stowing libelant's cargo— although the report of libelant's surveyor in Boston concluded that the damage to that shipment resulted from contact with wet dunnage. Libelant also introduced in evidence portions of the log which tended to indicate that the hatches of cargo compartments, in which its rubber had been stowed, were left open during periods of rain.

■ The fact that the separating paper used in the stowage had deteriorated and was adhering to the bales shows that either the bales were wet when loaded or water entered the stow. Concerning the shipments that were loaded at Singapore, I find that the wetting occurred while the rubber was in the hands of Prince Line's agents in Singapore prior to, or during the course of, the loading on the Javanese Prince and, therefore, respondents are liable for this damage. Since there was no proof as to when the shipments from Saigon were delivered to Prince Line's agents, it is not possible to determine whether the wetting occurred before or after such delivery without placing some reliance on the bill of lading.

■ The bills of lading state that the rubber was received in apparent good order and respondents are bound by that representation. Although respondents claim that a reasonable inspection would not reveal whether the bales had been wet sometime prior to the time they received them, the expert testimony at the trial has convinced me that if the rubber had been wet prior to delivery to respondents, it would have been stained to such an extent that a reasonable inspection would have uncovered the condition. Since I find that prior water damage could have been discovered by reasonable inspection, respondents are liable for the damage found when the rubber was unloaded, for as was said in Kupfermann v. United States, 2 Cir., 1953, 227 F.2d 348, 350:

"here with the type of goods involved there seems so obvious an opportunity for inspection that a possible rainfall on the goods five or six days earlier should not be an excuse to the carrier to avoid the normal effect of its bill of lading."

I find no necessary conflict between this decision and the Steel Recorder case, Hecht, Levis & Kahn, Inc. v. Isthmian S. S. Co., 149 F.Supp. 373, S.D.N.Y.1957. In that case, the evidence did not convince the trial judge that the condition of the goods on delivery was not inconsistent with the good order provision in the bill of lading and the carrier also proved that it exercised proper care in stowage. In this case, however, libelant did prove that water contact prior to delivery would have left stains that would have been noticeable on reasonable inspection. Libelant also produced substantial proof of improper stowage.

The only fact about which there usually can be no dispute in cases of this type is that the cargo arrived in a damaged condition. The experts called by the parties, of necessity, are forced to speculate as to the cause of the damage. They

buttress their opinions by certain fact assumptions which would give to their conclusions in favor of the respective parties an appearance of logical deductions therefrom. But in final analysis these opinions can be no more than reasoned speculations. Nor do the courts possess the prescience to turn these speculations by some alchemic judicial process into unassailable statements of absolute truth. Despite this inability, upon the courts is imposed the burden of deciding as between litigants upon the records before them which party should prevail. Where the record consists almost entirely of speculations, it is impossible to create certainty out of such ingredients.

■ Considering and weighing all the facts and circumstances, including the storage of the rubber on the dock at Singapore, the heavy rains, the occasionally open hatches, the wet dunnage, the ventilation and the character of the stowage and the so-called permissive inferences to be drawn therefrom, I find them, when coupled with the statement of good order in the bill of lading, to be sufficient to put the burden on respondents to show when the damage occurred.

■ There remains only the question of liability for the damage caused by the oil stains and the adherence of foreign matter. Respondent contends that by placing the bales of rubber in wooden cases libelant could have protected the rubber from this damage and, therefore, by using bareback bales libelant assumed the risk of such damage. However, libelant proved that the bareback pack is in common use in the shipment of rubber and that proper stowage would have prevented this type of damage.

I find, therefore, that respondents are liable to libelant for all the damage from contact with water, staining, and adherence of foreign substances. The case is referred to a Commissioner for the settling of the amount of the damages.

This opinion embodies the findings of fact and conclusions of law pursuant to Rule 46½ of the Admiralty Rules, 28 U.S.C.A.