## M. Rothschild & Co., Inc.

### v.

## P. T. Trikora Lloyd

Record No. 860468

March 3, 1989

Present: All the Justices

*Richard I. Gulick (Gulick and Sutton*, on briefs), for appellant.
*R. John Barrett (Vandeventer, Black, Meredith & Martin*, on brief), for appellee.

THOMAS, J., delivered the opinion of the Court.

The question for decision in this appeal is whether M. Rothschild & Co., Inc. (Rothschild), the consignee of two separate shipments of Indonesian crude rubber (SIR-20 crude),[1] successfully proved that the crude rubber was damaged by water while in the care and custody of P. T. Trikora Lloyd (the Carrier), upon its charted vessels, the M/V Carlow Hill and the M/V Khian Star. Rothschild filed two separate actions against the Carrier; the two cases were tried together in a bench trial. The trial court rejected Rothschild's claims on the ground "that the plaintiff has failed to

---

[1] SIR-20 crude is the shorthand reference to Standard Indonesian Rubber-20. In its natural state, this crude rubber is milky in color and resembles white cheese. When it is dried, it turns dark brown in color. SIR-20 is dried until its moisture content is below 0.8% by weight. It is then pressed into 75 pound blocks. These blocks are covered individually in thin polythene bags, then stacked in five layers of six blocks each, wrapped in heavier polythene and sealed in a crate. The exterior polythene can vary in translucency from transparent to opaque.

prove that the cargo in question, in each instance, was in good condition when delivered to the defendant."

Rothschild submits that the trial court is in error because the Carrier issued clean bills of lading for each shipment of crude rubber. Rothschild argues that under the Carriage of Goods by Sea Act (COGSA), 46 U.S.C. § 1300, *et seq.*, where it presents a clean bill of lading and shows that the cargo was discharged in a damaged condition, then it has made out a prima facie case and is entitled to recover unless the Carrier proves that it was not at fault in damaging the cargo.

## FACTS

### THE M/V CARLOW HILL

The first shipment of crude rubber was on the M/V Carlow Hill. In December 1983, Rothschild took a consignment of 100 pallets of SIR-20 crude under two bills of lading, each of which referred to 50 pallets of rubber. Before the cargo was loaded, the Carrier's "employees, servants or agents visually inspected the external packaging of each [pallet] of rubber . . . for external signs of damage." The Carrier issued the two bills of lading "clean" of any exceptions. The shipment arrived in Norfolk in January 1984. When it was "surveyed," some of the crude rubber was found to be "bleached."[2]

The Carlow Hill shipment was covered in light pink polythene. The evidence was uncontradicted that because of the contrast between the dark dried crude rubber and the bleached white crude rubber, the bleaching was clearly visible through the pink polythene. Some of the bleaching was so severe that it was visible from twenty to thirty feet away.

When the Carlow Hill shipment was surveyed, "windows" were cut into the polythene to provide a better view. This windowing was necessary because, at the corners of the crates or in places where the pink polythene was folded over, it was not as easy to see through it.

Aside from the direct testimony concerning the Carlow Hill cargo, there was expert testimony that, as a general proposition,

---

[2] SIR-20 crude is dark brown. If it is allowed to come into contact with water it will, over time, absorb the water and turn from dark brown to white. The change in color is known as bleaching.

the degree of visibility depended on the color and transparency of the polythene covering used as a liner on the crates. If the liner was opaque, visibility obviously would be zero. However, some of the liners were sufficiently transparent to permit visibility from five to fifty feet without the need for cutting windows in the polythene.

Rothschild claimed damages in the amount of $5,901.04 because of the depreciation in value of the Carlow Hill cargo.

## THE M/V KHIAN STAR

The second shipment of crude rubber was on the M/V Khian Star. In September 1984, Rothschild took consignment of 450 pallets of SIR-20 crude under nine bills of lading, each of which referred to 50 pallets of crude rubber. Again, as with the M/V Carlow Hill, before the cargo was loaded, the Carrier's "employees, servants or agents visually inspected the external packing of each pallet of rubber . . . for external signs of damage." The Carrier issued the nine bills of lading "clean" of any exceptions. The shipment arrived in Norfolk in November 1984. When the cargo was surveyed, some of it was found to be bleached.

The only testimony concerning the color of the polythene covering actually used on the M/V Khian Star cargo was that it was "opaque white." There are photographs in the record of this covering. It is obvious that the opaque white liners permitted no visibility of the cargo. Thus, the evidence with regard to the Khian Star shipment is that when it was loaded a visual inspection of the crates could not have revealed anything about the condition of the crude rubber contained therein.

Rothschild claimed damages in the amount of $8,641.55 because of the depreciation in value of the Khian Star cargo.

## DISCUSSION

The parties rely upon different COGSA provisions. Rothschild focuses upon 46 U.S.C. § 1303(3) and (4). The Carrier focuses upon 46 U.S.C. § 1303(3)(c). The pertinent provisions read as follows:

(3) Contents of bill. After receiving the goods into his charge the carrier, or the master or agent of the carrier, shall, on demand of the shipper, issue to the shipper a bill of lading showing among other things —

. . . .

(c) The apparent order and condition of the goods: *Provided, That, no carrier, master, or agent of the carrier, shall be bound to state or show in the bill of lading any marks,* number, quantity, or weight *which . . . he has had no reasonable means of checking.*

(4) Bill as prima facie evidence. Such a *bill of lading shall be prima facie evidence of the receipt by the carrier of the goods therein described in accordance with paragraphs (3)(a), (b), and (c), of this section* . . . .

46 U.S.C. § 1303 (emphasis added).

■ The principles surrounding the application of COGSA have developed by case law and are as follows: A claimant under COGSA makes out a prima facie case by showing delivery of goods to the carrier in good condition and discharge of those goods in damaged condition; issuance of clean bills of lading is sufficient to show receipt of the goods in good condition; once plaintiff makes out a prima facie case, the burden shifts to the carrier to prove that it is not liable for the damage. *Cummins Sales & Service, Inc.* v. *London & Overseas Ins. Co.*, 476 F.2d 498, 500 (5th Cir.), *cert. denied*, 414 U.S. 1003 (1973); *H. F. Staiger Co.* v. *P. T. Trikora Lloyd*, C.A. No. 87-395-N (E.D. Va. 1988) (MacKenzie, J.); *see also Interstate Steel Corporation* v. *S.S. "Crystal Gem,"* 317 F. Supp. 112, 118 (S.D.N.Y. 1970). Further, it has been said that "[t]he statutory policy permitting reliance upon bills of lading is an important one." *Kupfermann* v. *United States*, 227 F.2d 348, 350 (2d Cir. 1955).

On the basis of the foregoing principles, Rothschild submits that it proved all it was required to prove when it introduced clean bills of lading for the two shipments, then proved that the cargo was in a damaged condition when it was discharged in Norfolk. However, as the Carrier points out, the case is not quite so simple. ■ Subsection (c) of 46 U.S.C. § 1303(3) must also be given effect. According to that provision, a carrier is not bound to state matters, in a bill of lading, "which he has had no reasonable means of checking." Based on this provision, the Carrier argues that when the trial court held that Rothschild failed to prove delivery of the cargo to the Carrier in good condition, the trial court necessarily meant to say that, despite issuing clean bills of lading,

the Carrier was not bound by them because the Carrier did not have a reasonable opportunity to inspect the cargo. The problem is that the trial court made no such ruling.

Because the Carrier issued clean bills of lading, the blanket holding that Rothschild failed to prove delivery to the Carrier in good condition is only correct where there was no reasonable opportunity to inspect and where delivery in good condition was not proved by some other means. Further, because the trial court made no express finding concerning the Carrier's opportunity to inspect, we must review the facts to determine whether there was any credible evidence to.support the conclusion that, in the case of both shipments, the Carrier had no reasonable opportunity to inspect.[3]

Turning first to the evidence concerning the M/V Carlow Hill cargo, the record reveals that the bleaching was visible through the pink polythene. This is shown by the testimony of the witness who actually surveyed the particular cargo. It is confirmed by the photographs in the record. And it is buttressed by the expert testimony that visibility through the polythene depends on the color and transparency of the polythene. The Carrier did not contradict this evidence.

However, the Carrier argues that because the marine surveyors cut windows into the polythene to look at the Carlow Hill cargo, this means that the cargo could not have been seen without the windowing. This argument is unpersuasive. The plain testimony was that the bleaching was visible through the polythene. This does not mean that the damage could not be seen more clearly with the polythene cut away. The test is not whether the carrier

---

[3] On brief and in oral argument, the Carrier called the Court's attention to five similar cases concerning shipments of crude rubber on clean bills of lading. In four of those cases, the carrier prevailed because the factfinder concluded that the carrier had not had a reasonable opportunity to inspect. *H.F. Staiger Co.* v. *P.T. Trikora Lloyd*, C.A. No. 88-66-N (E.D. Va. 1988)(Smith, Magistrate); *H.F. Staiger Co.* v. *P.T. Trikora Lloyd*, C.A. 88-65-N (E.D. Va. 1988) (Smith, Magistrate); *Alan L. Grant* v. *M/V Athos*, 86 Civ. 2215 (S.D.N.Y. 1987)(Keenan, J.); and *Tokio Marine & Fire Ins. Co.* v. *M/V L Jalabert Botang*, 624 F. Supp. 402 (S.D.N.Y. 1985), *aff'd*, 800 F.2d 1128 (2d Cir. 1986). In the fifth case, the shipper prevailed because the factfinder concluded that the carrier had had a reasonable opportunity to inspect. *H.F. Staiger Co.* v. *P.T. Trikora Lloyd*, C.A. No. 87-395-N (E.D. Va. 1988) (MacKenzie, J.). These cases are of limited use in deciding the instant appeal. However, they establish at least two points: First, that cases of this kind turn on their facts; second, that it is the general practice in these cases for the factfinder to rule whether the carrier who issued a clean bill of lading had a reasonable opportunity to inspect the cargo.

had a perfect opportunity to inspect. All the law requires is a reasonable opportunity to inspect. That a marine surveyor uses windowing to get a better view of damage to a cargo of crude rubber does not, in and of itself, mean that a reasonable inspection by the Carrier could not have been made without windowing.

■ Thus, we must conclude, with regard to the Carlow Hill cargo, that a reasonable inspection could have been made by the Carrier. This means that the Carrier is now bound by its clean bill of lading. And, when Rothschild proved that the cargo was in a damaged condition at discharge, Rothschild was entitled to recover, unless the Carrier proved that the Carrier was not at fault in causing the damage. There was no such proof adduced in this case. We hold, therefore, that the trial court erred when it ruled that Rothschild failed to prove its case with regard to the Carlow Hill cargo.

■ The evidence concerning the M/V Khian Star cargo leads to the opposite conclusion. The only evidence about the particular polythene covering on this shipment was that it was opaque white. Because there was no visibility through that type covering, it follows that the Carrier had no reasonable opportunity to inspect the Khian Star cargo. Thus, the Carrier was not bound by its clean bills of lading concerning that cargo and Rothschild did not establish a prima facie case against the Carrier. This conclusion, however, does not end our inquiry concerning the Khian Star cargo.

Rothschild argues that even if it did not establish a prima facie case of delivery of the crude rubber to the Carrier in good condition based on the clean bills of lading, it did establish such a case based on certain answers to requests for admissions provided by the Carrier. Rothschild points out that the Carrier admitted that when its employees, servants, or agents examined the cargo in Indonesia, they did not find any of the following indications of exposure to water: (1) rusty metal bands; (2) moldy or stained lumber; (3) bleached rubber visible, if transparent polythene coverings were used; (4) water-spotted or water-stained polythene wrappings; or (5) standing water visible inside the polythene coverings, where transparent polythene was used.

■ The question is whether the admissions prove that the Khian Star cargo was delivered to the Carrier in good condition. We think not. First, two of the requests apply only where the polythene was transparent. Here, it was opaque. The other admitted items relate to purely external conditions of the crating. There

was no testimony that the lack of external signs of exposure to water proved the good condition of the unseen crude rubber. Absent such testimony, the lack of external signs of exposure to water cannot be relied on to support the proposition that the crude rubber was delivered in good condition. *See Tokio Marine*, 624 F. Supp. at 409. We hold that the trial court did not err when it ruled that Rothschild failed to prove delivery in good condition of the Khian Star cargo.

In light of the foregoing, the judgment appealed from will be affirmed in part, reversed in part, and remanded so that damages can be determined regarding the Carlow Hill cargo.

*Affirmed in part,*
*reversed in part,*
*and remanded.*